**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PUBLIC SERVICE COMPANY OF
COLORADO,

      Petitioner,

v.

UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

      Respondent,

-------------------------------

COLORADO INDEPENDENT
ENERGY,

      Amicus Curiae.

No. 99-9542

---

Appeal from Administrative Determination of the
United States Environmental Protection Agency
(EPA No. 8P-AR)

---

James A. Holtkamp, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Salt Lake City,
Utah, (Gary E. Parish, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Denver,
Colorado and Frank Prager, Associate General Counsel, New Century Energies,
Denver, Colorado, with him on the briefs), for Petitioner.

Daniel W. Pinkston, Senior Trial Attorney, (Lois J. Schiffer, Assistant Attorney
General, Denver, Colorado, Teresa Lukas, Of Counsel, Office of Regional

Counsel, U.S. Environmental Protection Agency, Denver, Colorado and M. Lea Anderson, Of Counsel, Office of General Counsel, U.S. Environmental Protection Agency, Washington, D.C., with him on the briefs), Environment and Natural Resources Division, U.S. Department of Justice, Denver, Colorado, for Respondent.

Jeffrey G. Pearson, Kelly, Haglund, Garnsey & Kahn, LLC, Denver, Colorado, filed an amicus curiae brief for Colorado Independent Energy Association.

---

Before **BRORBY**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

The Environmental Protection Agency ("EPA") issued two letters opining that a proposed new power plant and an existing plant owned by Public Service Company of Colorado ("PSCo") will constitute a "single source" of air emissions for purposes of air emissions permitting. Pursuant to 42 U.S.C. § 7607(b), PSCo brought this appeal to challenge the EPA's determination. The EPA then moved this court to dismiss PSCo's appeal for lack of subject matter jurisdiction, arguing the opinion letters do not constitute "final action" as required by § 7607(b). This court grants the EPA's motion and **dismisses** the appeal.[1]

---

[1]The Colorado Association of Commerce and Industry and the Edison Electric Institute filed motions to become amici curiae in this appeal. Because their briefs only address the merits of PSCo's appeal and this court does not reach the merits, we deny both motions.

## II. BACKGROUND

Under the federal Clean Air Act, any major emitting facility, which includes stationary sources of air pollutants, located in an area of the country which has already achieved the national ambient air quality standards must obtain a prevention of serious deterioration ("PSD") permit prior to beginning initial construction or making certain modifications to an existing facility. *See* 42 U.S.C. §§ 7471; 7407(d)(1)(A)(ii); 7475(a)(1); 7410(a)(2)(C), (D); 7479(1), (2)(C); 7411(a)(2), (3), (4). Pursuant to rules and regulations promulgated by the EPA, the state of Colorado, rather than the EPA itself, is the permitting authority for almost all stationary sources within Colorado. *See* 40 C.F.R. §§ 52.02, 52.320; 51 Fed. Reg. 31,125 (1986). The Colorado Department of Public Health and Environment ("CDPHE") has thus promulgated its own regulations governing the applicability and requirements for a PSD permit. *See* Colorado Air Quality Control Commission ("CAQCC") Regulation No. 3, Parts A & B.

In November of 1998, KN Power Company ("KN Power") applied to the CDPHE for a PSD permit for the construction of a new power-generating plant (the "Front Range facility") in Fort Lupton, Colorado. The Front Range facility was to be constructed by Front Range Energy Associates, LLC ("Front Range"), a joint venture formed by two companies, Quixx Mountain Holdings, LLC ("Quixx") and FR Holdings, LLC. Quixx is a subsidiary of Quixx Corporation,

which is a subsidiary of New Century Energies, Inc. ("New Century") and FR Holdings is a subsidiary of KN Power.

In April of 1999, PSCo, which owns and operates an existing power generating facility also in Fort Lupton (the "PSCo facility"), entered into a power-supply agreement (the "Agreement") with Front Range. Pursuant to the Agreement, Front Range would construct and operate the Front Range facility near the PSCo facility and PSCo would purchase the entire electric power and energy output from the Front Range facility. Moreover, the Front Range facility would be interconnected with the PSCo electric system. PSCo, like Quixx, is a subsidiary of New Century.

Also in April, KN Power withdrew its PSD permit application and instead applied for a "minor source permit," ostensibly because the Front Range facility would operate only during peak electricity demand periods and thus emit less than 250 tons of nitrogen dioxide and carbon monoxide per year. *See* 42 U.S.C. § 7479(1) (providing that certain types of stationary sources lacking the potential to emit 250 tons or more per year of an air pollutant do not qualify as "major emitting facilities"). After reviewing the minor source permit application and the attendant files, the CDPHE became concerned that the Front Range facility and the PSCo facility were, in part, under common ownership and that the two facilities would be co-managed. The CDPHE, therefore, questioned whether the

Front Range facility would merely be a *modification* to the existing PSCo facility such that together they would actually constitute a single stationary source or major emitting facility, thus requiring a PSD permit prior to construction. *See id.* §§ 7479(2)(C), 7411(a)(2), (4); 40 C.F.R. § 51.166(b)(2)(i), (23)(i); 51.166(i)-(r).

Under both federal and Colorado law, if the new Front Range facility and the existing PSCo facility (1) belong to the same industrial grouping, (2) are located on contiguous or adjacent property, and (3) are under common control, they constitute a single stationary source. *See* 42 U.S.C. § 7411(a)(3); 40 C.F.R. § 51.166(b)(6); CAQCC Regulation No. 3 Part A § I.B.59. If the two facilities constitute a single stationary source, construction of the Front Range facility would therefore be deemed a major modification to an existing major emitting facility, triggering the PSD permit requirement. *See* 40 C.F.R. § 51.166(b)(2)(i), (23)(i); *id.* § 51.166(i)-(r). The CDPHE indicated that the two facilities "clearly" met the first two elements of the definition of a single stationary source and it was unsure as to whether the third element of common control was also present. The CDPHE thus solicited the EPA's opinion about whether the two facilities would constitute a single source.

On October 1, 1999, in response to the CDPHE's inquiry, the EPA sent a letter to the CDPHE "outlin[ing] [its] views" on whether the proposed Front Range facility and the existing PSCo facility would constitute a single source.

The letter stated, "it is our interpretation of the PSD regulations that the [Front Range facility] and existing PSCo generating facility constitute a single source" and that the Front Range facility, "if constructed as proposed, would be a major modification of this major source and therefore, is subject to the requirement to obtain a PSD permit . . . ." In the letter, the EPA reasoned that both the control vested in PSCo over the Front Range facility by the power supply agreement and New Century's common ownership interests in both facilities demonstrated common control over the two facilities. After PSCo requested the EPA to reconsider its determination, the EPA sent a second letter on November 12, 1999 to the Associate General Counsel for New Century briefly reconfirming its earlier opinion. To this date, the CDPHE has neither granted nor denied the minor source permit.

## III. DISCUSSION

In appealing the opinion rendered in the two EPA letters, PSCo contends this court has jurisdiction over that appeal pursuant to 42 U.S.C. § 7607(b). The parties agree that the relevant portion of § 7607(b) provides,

> A petition for review of the [EPA] Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title,[] under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title . . . or

-6-

under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or *any other final action of the Administrator under this chapter* (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

*Id.* § 7607(b)(1) (emphasis added). On EPA's motion to dismiss, the question before this court is whether the two EPA letters constitute "final action" within the meaning of § 7607(b)(1).

In *Harrison v. PPG Industries, Inc.*, the United States Supreme Court considered the meaning of the words "any other final action" within § 7607(b)(1). *See* 446 U.S. 578, 586 (1980). The parties in *Harrison*, however, agreed that the challenged EPA action constituted "'final action' as that term is understood in the context of the Administrative Procedure Act [("APA")] and other provisions of federal law." *Id.* The Court, therefore, was left to construe only the words "any other." *See id.* at 586-94. The holding in *Harrison* that § 7607(b)(1) conferred jurisdiction on the court of appeals over the challenged EPA action is thus inapposite to the instant case. Nonetheless, the Court's acceptance of the parties' agreement that the challenged action was a "final action" within the meaning of the APA counsels this court to look to interpretations of the term "final action"

under the APA when construing that same term under § 7607(b)(1).[2] *See id.* at 586.

In resolving whether a particular agency action is final under the APA, this court recently stated, "we look to whether [the action's] impact is direct and immediate, whether the action marks the consummation of the agency's decisionmaking process, and whether the action is one by which rights or obligations have been determined, or from which legal consequences will flow." *Colorado Farm Bureau Fed'n v. United States Forest Serv.*, No. 99-1125, 2000 WL 992234, at *1 (10th Cir., July 18, 2000) (citations and quotations omitted). Application of these three factors in the instant case leads to the conclusion that the two EPA opinion letters do not constitute final action by the EPA.

The impact of the letters is neither direct nor immediate, particularly as it concerns PSCo. In *Franklin v. Massachusetts*, the Court indicated that the direct and immediate impact factor addresses "whether [the agency action] is one that will directly affect *the parties*." 505 U.S. 788, 797 (1992) (emphasis added). Because PSCo is not even the company seeking a permit to build the Front Range facility, the EPA's opinion concerning the type of permit required for the construction of that facility does not directly impact PSCo. At most, the EPA's

---

[2]Consistent with this approach, both the EPA and PSCo rely on decisions construing the words "final action" within the APA.

opinion letters could potentially cause an *indirect* impact upon PSCo, if the letters create delay in the construction of the Front Range facility which in turn inhibits Front Range from meeting its obligations to PSCo under the Agreement.[3] The EPA letters do not even cause a direct and immediate impact upon KN Power, the company actually seeking a permit to build the Front Range Facility, because it is the CDPHE as the permitting agency, and not the EPA, which will initially determine whether a minor source permit or a PSD permit is required. Although the EPA ultimately *could* overturn any decision rendered by the CDPHE, the opinion expressed in the two letters "serves more like a tentative recommendation than a final and binding determination. *Id.* at 798; *see* 42 U.S.C. §§ 7413(a)(5), 7661d(b)(1).

Moreover, the two EPA opinion letters in no way mark the consummation of its decision-making process, which cannot occur before the CDPHE has acted on the permit application. As mentioned above, it is the CDPHE which first ascertains whether the Front Range facility may be constructed with merely a minor source permit or whether the PSD permit is required. *See* 40 C.F.R. §§ 52.02, 52.320; 51 Fed. Reg. 31,125 (1986). If the CDPHE issues a minor source permit, the EPA could then step in and take some enforcement action against the

---

[3]Because this court dismisses PSCo's appeal for lack of subject matter jurisdiction under 42 U.S.C. § 7607(b), we need not resolve the separate question whether PSCo has standing to pursue its challenge to the EPA's determination.

state or against Front Range or it could veto the permit issued. *See* 42 U.S.C. §§ 7413(a)(5), 7661d(b)(1). The EPA could also alter its opinion after the CDPHE has issued the minor source permit and allow construction of the Front Range facility to proceed under that permit. The EPA, however, cannot act until the CDPHE does, and the CDPHE has yet to act on the minor source permit application.

Even if the CDPHE accedes to the EPA's opinion as stated in the two letters and denies the minor source permit, the opinion letters still would not constitute the consummation of the EPA's decision-making process. Under Colorado law, KN Power would be entitled to a review by the Air Quality Control Commission of the CDPHE's denial of the minor source permit. *See* Colo. Rev. Stat. § 25-7-114.5(8), -103(7). If the Air Quality Control Commission upheld the CDPHE's determination, KN Power could still seek judicial review in state court. *See id.* § 25-7-120. The EPA might well be convinced by a decision rendered in state court or by the Air Quality Control Commission that construction of the Front Range facility does not trigger PSD permit requirements. The two letters issued well before this state process has even begun, therefore, do not mark the consummation of the EPA's decision-making process.

Finally, the two opinion letters do not determine any rights or obligations of PSCo or any other entity; nor do legal consequences flow from these letters.

*See Christensen v. Harris County*, 120 S. Ct. 1655, 1662 (2000) ("[Statutory] interpretations such as those in [agency] opinion letters . . . lack the force of law . . . ."). In arguing to the contrary, PSCo contends that a draft of the October 1 letter which was earlier sent to the CDPHE did determine Colorado's obligation to deny the minor source permit and require a PSD permit when it stated the following: "If Colorado issues the signed [minor source] permit to the applicant, the State will not be acting in compliance with requirements of the Act relating to the construction and modification of new sources. EPA Region VIII is considering what action to take to prevent such non-compliance . . . ." PSCo contends that in this statement, the EPA overtly threatened enforcement action against Colorado, thus placing upon the CDPHE a legal obligation to deny the minor source permit. The nature of this letter as a mere draft and the deletion of this purported threat from the finalized version of the letter sent on October 1, however, suggest that the EPA had not definitively determined the obligations of the state of Colorado when it sent the October 1 letter. The October 1 letter itself began with far more temperate language, stating "this letter outlines the [EPA's] views," and it never ordered the state or any other party to take any particular action.[4]

_____

[4]PSCo's failure to ask this court for any specific relief, other than a reversal of the EPA's determination in its opinion letters, perhaps reveals a tacit admission that the EPA has yet to impose any affirmative obligations upon or declare any

-11-

In arguing further that legal consequences flow from the EPA letters, PSCo relies on the Ninth Circuit decision in *Hawaiian Electric Co. v. United States Environmental Protection Agency*. *See* 723 F.2d 1440, 1442 (9th Cir. 1984). In *Hawaiian Electric*, the Ninth Circuit concluded an EPA determination that a PSD permit was required before a power plant could switch to a higher sulfur fuel constituted final agency action under § 7607(b)(1). *See id*. at 1441-42. The Ninth Circuit reasoned, "although the [EPA's] application of the major modification definition is an interim step in the PSD permitting process, it has immediate legal consequences, i.e., the requirement of PSD review." *Id.* at 1442. Admittedly, the major modification determination in *Hawaiian Electric* is very similar to the opinion expressed in the two EPA letters in the instant case. The legal consequence of the EPA's determination in *Hawaiian Electric* that PSD review was required, however, does not similarly flow from the EPA opinion letters here. Unlike in *Hawaiian Electric*, the EPA is not the permitting authority in the state of Colorado. *See id.* at 1441. As discussed above, the two EPA opinion letters do not obligate the CDPHE to subject the Front Range facility construction project to PSD review; the CDPHE can instead choose to issue a minor source permit, and

rights of PSCo or other involved entities. This court would violate Article III's prohibition against advisory opinions were it to do that which PSCo requests, i.e., issue a mere statement that the EPA's interpretation and application of the law was incorrect without ordering some related relief. *See generally United States v. Burlington No. R.R. Co.*, 200 F.3d 679, 699 (10th Cir. 1999).

only then can the EPA take action to require PSD review.  *Hawaiian Electric*, therefore, is distinguishable.

In sum, the nature of both the permitting process in Colorado and the EPA letters themselves defies characterization of those letters as "final action" from which an appeal may be taken under 42 U.S.C. § 7607(b)(1).


## IV. CONCLUSION

Because PSCo's appeal pursuant to 42 U.S.C. § 7607(b) fails to challenge a "final action" by the EPA, this court **DISMISSES** the appeal for want of subject matter jurisdiction.