PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2937
_____

OCEAN COUNTY LANDFILL CORPORATION,

Petitioner

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
REGION II,

Respondent
_____

On Petition for Review from the
Environmental Protection Agency
Region II
_____

Argued January 10, 2011
_____

Before:  RENDELL, AMBRO, and FISHER, <u>Circuit Judges</u>

(Opinion filed   February 2, 2011 )

Sandra T. Ayres, Esquire (Argued)
Scarinci & Hollenbech
1100 Valley Brook Avenue
P.O. Box 790
Lyndhurst, NJ   07071-0000

        Counsel for Petitioner

Ignacia S. Moreno
   Assistant Attorney General
Amanda S. Berman, Esquire (Argued)
United States Department of Justice
Environmental Defense Section
601 D Street, N.W.
Washington, D.C.   20004-0000

Maria Quintin, Esquire
Scott Jordan, Esquire
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Ariel Rios building
Washington, D.C.  20460-0000

        Counsel for Respondent

                    _____

            OPINION  OF  THE  COURT
                    _____

AMBRO, <u>Circuit Judge</u>

        The Environmental Protection Agency ("EPA") issued
a letter opining that facilities operated by Ocean County

2

Landfill Corporation ("OCLC") and Manchester Renewal Power Holdings ("MRPC") were under common control for the purposes of air emissions permitting. In this petition for review, OCLC challenges that determination under subsection 307(b)(1) of the Clean Air Act. *See* 42 U.S.C. § 7607(b) (providing for judicial review of any "final action" by the EPA). The EPA moved to dismiss for lack of subject matter jurisdiction. We now grant that motion.

## I. Background

Under Title V of the Clean Air Act, certain stationary sources of air pollution must obtain federal operating permits. *See generally* 42 U.S.C. §§ 7661-7661f. Although a federal requirement, Title V permitting programs are administered and enforced primarily by state and local air permitting authorities, though EPA oversight continues. *See* 42 U.S.C. § 7661a(d)(1). That is the case in New Jersey, where the New Jersey Department of Environmental Protection ("NJDEP") acts as the statewide Title V permitting authority. *See* 40 C.F.R. § 70, App. A.

OCLC owns and operates a municipal solid waste landfill in Ocean County, New Jersey. MRPC operates a gas-to-energy facility on adjacent property. Currently, each entity operates under its own Title V permit.

MRPC's permit expired in 2004, and it sought renewal. In March 2005, the NJDEP issued a draft permit for public comment. Three months later, the EPA notified the NJDEP that there appeared to be a common control relationship between OCLC's landfill and MRPC's gas-to-energy facility, and requested a common control

3

determination from the State.[1]  When the State failed to take action, the EPA formally objected to the draft permit. Subsequently, the NJDEP requested the EPA's assistance in making the determination.

Over the next several years, with substantial input from OCLC and MRPC, the EPA assisted the NJDEP in conducting the common control analysis.  This process culminated on May 11, 2009, when the EPA sent a letter to both entities advising them that the process had been concluded, and that it had found OCLC and MRPC to be under common control.[2]  The letter indicated that the EPA

---

[1]  Two or more stationary sources of air pollution may be considered a single source for air pollution permitting purposes if they are "located within a contiguous area and under common control."  42 U.S.C. § 7661(2).  The phrase "common control" is not defined in the statute, but, elsewhere in its regulations, the EPA has defined it as "the power to direct or cause the direction of the management and policies of a person or organization, whether by ownership of stock, voting rights, by contract, or otherwise."  40 C.F.R. § 66.3(f) (setting forth when penalties may be imposed on a source that fails to meet a deadline or make an upgrade).

[2]  The EPA presumes that two entities are under common control when one operator locates on the property of another. JA 10.  Because the OCLC and MRPC facilities are both located on property owned by OCLC's corporate parent, the Atlantic Pier Company, Inc. ("APC"), the EPA employed the presumption.  *Id.*  In its letter of May 11, 2009, the EPA also pointed to the elaborate contractual relationships connecting the two entities and articulated the following (non-exhaustive) list of factors in support of its determination of common

"render[ed] the determination as final," and would require the existing Title V permits to be "reopened and reissued to both companies as a single source." The EPA also noted that it had "directed NJDEP to proceed with permit modification, as required, to reflect the single source status of [OCLC] and [MRPC] operations," although the NJDEP has yet to take any action. Under New Jersey's application shield law, OCLC and MRPC will continue to operate under the conditions imposed by their expired permits until NJDEP issues a new permit.[3] N.J. ADMIN. CODE § 7:27-22.8.

## II. Discussion

Pursuant to 42 U.S.C. § 7607(b)(1), we have jurisdiction over "any . . . final action of the Administrator." Thus, the question before us is whether the EPA's common control determination is "final action" within the meaning of the statute.

"As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process . . . – it must not be of a merely tentative or interlocutory nature.

---

control: (1) APC retains control over some stock in MRPC's subsidiary, Ocean Energy Holdings ("OEC"), that APC sold to MRPC; (2) MRPC depends on OCLC as its only source of fuel; (3) MRPC and OEC are not allowed to sell or transfer gas to another entity without written consent from a subsidiary of APC; and (4) the entities have a financial interest in each other (*i.e.*, MRPC shares tax credits with APC).

[3] We use the singular only for convenience, as we realize the theoretical possibility of new, but separate, permits.

5

And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow' . . . ." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted). We review the following factors to determine whether an agency action is final:

> 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operations of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act.

*Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (citations omitted).

OCLC argues that the EPA's common control determination is final agency action because the EPA, in its letter of May 11, 2009, described its decision as "final" and required immediate enforcement of its decision by demanding that OCLC and MRPC's existing permits be "reopened and reissued to both companies as a single source." We disagree.

First, although the EPA described its decision as "final," it reasonably explains this comment to be in reference to the four-year-long process of making its common control determination. EPA's letter is not "final" in the sense required for judicial review under 42 U.S.C. § 7607(b)(1) because the letter was only one, intermediate, step in the permitting process. Before a new permit governing OCLC

6

and MRPC will issue, the NJDEP must provide the parties and the EPA with notice and an opportunity to comment on any draft permit. *See* 42 U.S.C. §§ 7661a(b)(6), 7661d(a). The EPA will also have an opportunity to object formally to the draft permit, and, if the NJDEP declines to address the EPA's objections, to take over the permitting process from the State. *See* 42 U.S.C. § 7661d(b)-(c). There is no way to know in advance whether the final permit that results from that process will incorporate the common control determination that OCLC seeks to challenge here. Thus, a new permit, not intermediate decisions, will mark the "consummation" of the agency's decisionmaking process.

Second, the EPA's decision does not contemplate immediate compliance. Although the EPA has directed the NJDEP to accept its determination and begin a new permitting process, the NJDEP has yet to do either formally. OCLC contends that the NJDEP has agreed to rely on the EPA's decision, but this is also not dispositive. *See, e.g., Hindes v. FDIC*, 137 F.3d 148, 163 (3d Cir. 1998) ("[W]here a state actor relies upon a federal agency's notice, the state action does not convert the notice into a final agency act under the APA.").

Additionally, OCLC will continue to operate under the terms of its existing permits until a new permit issues. Therefore, and third, the EPA's decision has no effect on OCLC's day-to-day operations.

Fourth, the question of the validity of the EPA's common control determination is not purely a legal one: our ability to decide the issue would benefit greatly from additional facts, most importantly the terms of a new permit and whether and/or how it will harm OCLC and, perhaps, how the new permit affects MRPC, which is not a party to OCLC's petition for review.

7

Finally, our immediate review would not speed enforcement of the Clean Air Act. To the contrary, it would delay further the permitting process.

In sum, the EPA's common control decision simply is not final agency action, which will only occur when a new permit issues.

The text of the statute bolsters our conclusion. Specifically, 42 U.S.C. § 7661d(c) provides that "[n]o [EPA] objection shall be subject to judicial review until the Administrator takes final action to issue or deny a permit under this subsection." Although OCLC correctly points out that the EPA's May 11, 2009 common control determination was not itself a formal EPA "objection" to a draft permit, it arose out of, and directly relates to, EPA's formal objection to the NJDEP's draft permit for MRPC. We therefore regard § 7661d(c) as indicating Congress's intent to subject those objections to judicial review only after the EPA's issuance or denial of a permit. By contrast, the statutory provision on which OCLC seeks to rely, 42 U.S.C. § 7661d(b)(2), plainly does not apply here. That section provides for immediate judicial review when the EPA denies a third party's petition requesting that the EPA object to a draft permit. In this case, OCLC has not petitioned the EPA to object to a draft permit; instead, it effectively has asked EPA to withdraw its objection to the NJDEP's draft permit for MRPC.

Several other Courts of Appeals have reached the same conclusion in similar circumstances. In *Public Service Company of Colorado v. EPA*, the Court of Appeals for the Tenth Circuit held that two EPA letters, which set forth the agency's common control determination as to certain facilities, were not final action. 225 F.3d 1144 (10th Cir. 2000). The Court dismissed the challenge for lack of jurisdiction, holding that the EPA's opinion letters "in no way

8

mark the consummation of its decision-making process, which cannot occur before the [Colorado Department of Public Health and Environment] has acted on the permit application." *Id.* at 1147. The Court went on to note that the letters "do not determine any rights or obligations of [the Public Service Company] or any other entity; nor do legal consequences flow from these letters." *Id.* at 1148 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("[Statutory] interpretations such as those in [agency] opinion letters . . . lack the force of law . . . .")).

OCLC attempts to distinguish *Public Service Company* on grounds that the EPA letters in that case neither stated that the agency's determination was final nor directed the State to enforce the determination. OCLC argues further that the state permitting agency retained authority to decide that the facilities at issue were not under common control, and thus the EPA letters were more like "tentative recommendations." *Id.* at 1147.

These arguments do not persuade us. First, as discussed above, the EPA's characterization of its decision as "final" is not dispositive. Moreover, although the EPA has directed the NJDEP to reopen the permitting process, the latter retains the authority to decline or delay adopting the determination and set the terms of the new permit. In addition, as the Tenth Circuit opined, "[e]ven if the [State] accedes to the EPA's opinion . . . and denies the . . . permit, the opinion letters still would not constitute the consummation of EPA's decision-making process." *Id.* at 1148. Here, as in that case, once the NJDEP issues a permit, OCLC will be entitled to challenge it in state court, and the "EPA might well be convinced by a decision rendered in state court" to reverse itself on the common control decision. *Id.*

9

The reasoning of the Court of Appeals for the Seventh Circuit in *American Paper Institute, Inc. v. EPA* also applies here. 882 F.2d 287 (7th Cir. 1989). In that case, the American Paper Institute sought judicial review of a policy statement drafted by EPA Region V. The Seventh Circuit Court dismissed the petition for lack of jurisdiction, stating that

> Region V does not demand that any firm change its conduct now . . . . Every permit holder may proceed under the authority of its existing permit. . . . If states heed [Region V's] suggestions to the detriment of paper mills, review is possible in state court. If states propose a course of action inconsistent with Region V's wishes, the Administrator may overrule Region V. If the Administrator adopts Region V's position and a permit is turned down, modified, or rescinded, review will be available in state or federal court. That review, on a full record, will disclose the EPA's final position, as applied to the plant in question.

*Id.* at 289. Similarly, here, if the NJDEP adopts the EPA's determination and issues a permit that OCLC believes to be to its detriment, OCLC may seek review in state court. If the NJDEP refuses to adopt the EPA's determination, the Administrator may overrule that decision, and review will be available in state or federal court. *See Appalachian Energy Group v. EPA*, 33 F.3d 319 (4th Cir. 1994) (dismissing for lack of jurisdiction a challenge to a memo in which the EPA opined that a permit would be required for certain storm water discharges from construction activities because, among other reasons, the EPA had not issued or denied a permit); *City of San Diego v. Whitman*, 242 F.3d 1097 (9th Cir. 2001) (dismissing San Diego's challenge to an EPA letter—opining

10

that the Oceans Pollution Reduction Act would apply to the City's pollution discharge permit renewal—because agency action would not be final until the completion of the permit appeals process).

The cases cited by OCLC are distinguishable. For example, in *Star Enterprise v. EPA*, both parties conceded that the determination at issue (that certain regulations promulgated under the Clean Air Act applied to gas turbines in an electrical power plant) was final agency action. 235 F.3d 139, 146 n.9 (3d Cir. 2000). Likewise, in *Hawaiian Electric Company v. EPA*, the agency determined that Hawaiian Electric Company's proposed change to higher sulfur fuel would be a "major modification" that would trigger a permitting process. 723 F.2d 1440, 1441 (9th Cir. 1984). Consistent with the EPA's position in that case, the Court of Appeals for the Ninth Circuit held that the determination was final and reviewable because it represented "EPA's final statement on the legal issues" and had immediate legal consequences – namely, that the company had to obtain a permit before switching fuels. *Id.* at 1442. Clearly, the situation here is different, as OCLC must obtain a permit regardless of the EPA's determination on the issue of common control. [4]

---

[4] We also question whether *Hawaiian Electric* was correctly decided, as it seems to be at odds with *FTC v. Standard Oil Company*, 449 U.S. 232, 242 (1980), in which the Supreme Court held that regulatory proceedings before an agency are "different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action." Along the same lines, a more recent decision of the Court of Appeals for the Ninth Circuit suggests that "costs of statutory compliance," such as the costs of undergoing

In sum, the EPA determination at issue here, an interlocutory decision in the larger permitting process, "defies characterization . . . as 'final action' from which an appeal may be taken . . . ." *Public Serv. Co.*, 225 F.3d at 1149.

### III.  Conclusion

For these reasons, the EPA's common control determination is not "final action" within the meaning of 42 U.S.C. § 7607(b).  Therefore, we lack jurisdiction to hear OCLC's petition for review, and grant the motion to dismiss it.

---

permitting proceedings, must be borne by the private party and do not render an agency decision "final" for purposes of judicial review. *Fairbanks N. State Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 596 n.11 (9th Cir. 2008) (contrasting *Helca Mining Co. v. EPA,* 12 F.3d 164 (9th Cir. 1993) (holding that EPA action initiating permitting proceedings was not final agency action), with *Hawaiian Electric*).