# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 13, 2013

No. 12-60482

Lyle W. Cayce
Clerk

LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,

Petitioner

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent

Petition for Review of an Order of the
Environmental Protection Agency

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Louisiana Department of Environmental Quality ("LDEQ") petitions for judicial review of an Environmental Protection Agency objection to three title V permits issued by LDEQ to Nucor Steel Louisiana ("Nucor"). We dismiss the petition because we lack subject matter jurisdiction.

## I.

Title V of the Clean Air Act ("CCA") establishes an operating permit program to assure compliance with the CAA's requirements during a facility's ongoing operation.[1] Title V operating permits set forth emissions limitations,

---

[1] *See* 42 U.S.C. §§ 7661–7661f.

No. 12-60482

standards, monitoring requirements, compliance schedules, and other conditions necessary to assure compliance with the requirements of the CAA.[2] Congress designed the title V permit program to be administered and enforced primarily by state and local air permitting authorities.[3] Each state must develop and submit to the EPA for approval a "permit program" designed to meet the requirements of title V of the CAA and its implementing regulations.[4] Under Louisiana's current permitting system, a facility must submit an application for a title V operating permit before commencing construction.[5]

Title V, specifically 42 U.S.C. § 7661d, provides a mechanism for EPA review of title V permits. This dispute arises out of that review process. State permitting authorities must submit each proposed title V operating permit to the EPA for review.[6] The EPA Administrator must object to the issuance of any permit "not in compliance with the applicable requirements of this chapter" within 45 days after receiving a copy of the proposed permit.[7] If the EPA Administrator does not object in writing during that 45-day review period, any person may, within 60 days after the expiration of the 45-day review period, petition the Administrator to object.[8] "The Administrator shall issue an objection . . . if the petitioner demonstrates to the Administrator that the permit is not in compliance with the requirements of [the CAA]."[9] Section 7661d(b)(2)

---

[2] *Id.* § 7661c(a); *see* 40 C.F.R. part 70.

[3] *See* 42 U.S.C. §§ 7661a(d)(1), 7661a(i), 7661d.

[4] *Id.* § 7661a(d).

[5] *See* LA. ADMIN. CODE tit. 33, part III, §§ 507, 509.

[6] 42 U.S.C. § 7661d(a)(1).

[7] *Id.* § 7661d(b)(1).

[8] *Id.* § 7661d(b)(2).

[9] *Id.*

2

requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed."[10]

Title V also authorizes judicial review of the Administrator's decision to grant or deny a petition. If the Administrator denies the petition, that denial is subject to judicial review.[11] However, if the Administrator grants the petition and issues an objection, § 7661d(c) provides that "[n]o objection shall be subject to judicial review until the Administrator takes final action to issue or deny a permit under this subsection."[12]

## II.

LDEQ's request for judicial review concerns an EPA objection to three title V permits issued by LDEQ to Nucor for an ironmaking facility near the town of Convent, Louisiana. The proposed facility included a pig iron manufacturing process and a direct reduced iron ("DRI") manufacturing process. LDEQ issued a separate title V permit for each process. What transpired during LDEQ's permitting process is undisputed.

On May 24, 2010, LDEQ issued a title V permit to Nucor for the pig iron process. On June 25, 2010, Zen-Noh Grain Corporation ("Zen-Noh"), which operates a grain export facility adjacent to Nucor's planned facility, filed a petition with the EPA, requesting, in relevant part, that the Administrator object to the title V permit issued by LDEQ.[13] On November 19, 2010, after the Administrator failed to grant or deny Zen-Noh's first petition within 60 days after it was filed, as required by § 7661d(b)(2), Zen-Noh filed suit against the

---

[10] *Id.*

[11] *Id.*

[12] *Id.* § 7661d(c).

[13] The Louisiana Environmental Action Network ("LEAN") and the Sierra Club also filed a separate petition with the EPA on the same day. That petition is still being resolved.

EPA in the Eastern District of Louisiana, seeking to compel the EPA to take action with respect to the petition. In settlement of Zen-Noh's suit, EPA agreed that by March 16, 2012, it would issue an order or orders responding to Zen-Noh's petitions, to the extent that such a response was required under § 7661d(b)(2).

On January 27, 2011, LDEQ issued a modified title V permit for the pig iron process, incorporating modifications requested by Nucor, as well as a title V permit for the DRI process. On May 3, 2011, Zen-Noh filed a second petition with the EPA requesting the Administrator object to the modified title V permit for the pig iron process and to the title V permit for the DRI process.[14]

On March 23, 2012, almost twenty-one months after Zen-Noh filed its first petition and over ten months after it filed its second petition, the EPA issued an objection to each of the three title V permits ("the Objection"). On June 21, 2012, LDEQ responded to the Objection. On June 22, 2012, LDEQ petitioned this Court for judicial review of the Objection. In its petition for judicial review, LDEQ requests that this Court (1) vacate the Objection and (2) issue a declaratory ruling that the Objection was improper for a variety of reasons. This Court granted Nucor's motion to intervene on July 16, 2012.

### III.

Because we lack subject matter jurisdiction, we must dismiss LDEQ's petition for judicial review. We "review questions of subject matter jurisdiction *de novo*."[15] LDEQ and Nucor bear the burden of establishing jurisdiction.[16] Here, because "[t]he United States, as sovereign, is immune from suit save as it

---

[14] LEAN and the Sierra Club also filed a series of separate petitions with the EPA. Those petitions are still being resolved.

[15] *In re Bissonnet Invs. LLC*, 320 F.3d 520, 522 (5th Cir. 2003).

[16] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

consents to be sued,"[17] a waiver of sovereign immunity "is a prerequisite for jurisdiction,"[18] and "the terms of [the United States'] consent to be sued . . . define [the] court's jurisdiction to entertain the suit."[19]  A waiver of sovereign immunity "must be construed strictly in favor of the sovereign."[20] And, "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly construed, and exceptions thereto are not to be lightly implied."[21]

The Administrative Procedure Act, specifically 5 U.S.C. § 702, contains a general waiver of sovereign immunity for federal court actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity under color of legal authority."[22]  However, the APA's waiver of sovereign immunity makes clear that it does not "affect[] other limitations on judicial review" or "confer[] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."[23]  42 U.S.C. § 7661d(c), a provision of title V, contains such "other limitations on judicial review."  That paragraph provides that "no objection shall be subject to judicial review *until the Administrator takes final action to issue or deny a permit under this subsection.*"[24]  Because the EPA

---

[17] *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

[18] *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

[19] *Sherwood*, 312 U.S. at 586.

[20] *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (internal quotations marks omitted).

[21] *Block v. N.D. ex. rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).

[22] 5 U.S.C. § 702.

[23] *Id.*

[24] 42 U.S.C. § 7661d(c) (emphasis added).

has not "take[n] final action to issue or deny a permit under [title V]," § 7661d(c) bars judicial review of the Objection.[25]

LDEQ and Nucor's counter-arguments fail to persuade.  They first argue that, because the EPA failed to object during § 7661d(b)(2)'s 60-day window for granting or denying a petition, § 7661d(c)'s limitation on judicial review does not apply.  Nucor offers no support for that interpretation of § 7661d(b)(2), other than legislative history indicating that Congress intended the title V petition process to be timely, and its argument ignores the plain language of § 7661d(b)(2).  Section 7661d(b)(2) does not prohibit the EPA from issuing an objection after the 60-day window has expired, and § 7661d(c) does not distinguish between timely and late objections in defining the point at which judicial review may be sought.  Nor did Congress provide a remedy for an untimely objection.  In such cases, courts are not to supply loss of jurisdiction as a consequence of a late objection.[26]

LDEQ and Nucor next argue that the Objection is not an "objection" within the meaning of § 7661d and therefore not subject to § 7661d(c)'s requirement that the Administrator take final action to issue or deny a permit before it can be subject to judicial review.  LDEQ and Nucor point to no text supporting the distinction they attempt to draw, nor do they provide any workable rule for determining what constitutes an actual "objection."  They essentially argue that because the Objection is improper, it is not an actual objection and is therefore subject to judicial review.  But that same argument would apply in any action challenging an EPA objection.  Accepting the argument would eviscerate § 7661d(c)'s limitation on judicial review of EPA objections, would require determination of the merits of the challenge to the Objection before determining

---

[25] *See Ocean Cnty. Landfill Corp. v. EPA*, 631 F.3d 652, 656 (3d Cir. 2011) ("We therefore regard § 7661d(c) as indicating Congress's intent to subject those objections to judicial review only *after* the EPA's issuance or denial of a permit." (emphasis added)).

[26] *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003).

jurisdiction, and is in tension with the necessity for subject matter jurisdiction to decide the merits of a challenge.[27]  Whatever may be the outer limits of an objection, relabeling the EPA action does not change its substance.

We hold that this Court lacks subject matter jurisdiction to review the Objection, but we do not determine whether LDEQ and Nucor may pursue other avenues of judicial review, such as an action in district court under 42 U.S.C. § 7604(a)(2).  We conclude that review in this forum is not proper until the Administrator takes final action issuing or denying a permit.

## IV.

LDEQ's petition for judicial review is DISMISSED for lack of jurisdiction.

---

[27] *See Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94 (1998).