**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5794-14T1

IN RE NEWARK ENERGY CENTER
PROPOSED AIR POLLUTION CONTROL
OPERATING PERMIT MODIFICATION.

Argued October 31, 2017 — Decided December 1, 2017

Before Judges Yannotti, Carroll and Mawla.

On appeal from New Jersey Department of
Environmental Protection, Program Interest
No. 08857.

Raghu Murthy argued the cause for appellants
Ironbound Community Corporation and New Jersey
Environmental Justice Alliance (Eastern
Environmental Law Center, attorneys; Mr.
Murthy and Aaron Kleinbaum, on the briefs).

John G. Valeri, Jr. argued the cause for
respondent Newark Energy Center (Chiesa
Shahinian & Giantomasi, PC, attorneys; Mr.
Valeri, on the brief).

Jung Kim, Deputy Attorney General, argued the
cause for respondent New Jersey Department of
Environmental Protection (Christopher S.
Porrino, Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of
counsel; Ms. Kim, on the brief).

PER CURIAM

Appellants are the Ironbound Community Corporation and the New Jersey Environmental Justice Alliance. They appeal from a decision of the New Jersey Department of Environmental Protection (DEP) granting an application by Newark Energy Center (NEC) to modify its 2012 Air Pollution Control Operating Permit.

Appellants contend the DEP issued the modification permit without first requiring NEC to provide a public emergency response plan, a public emergency notification plan, and detailed public reports. As a consequence, appellants argue the modification permit violates the federal Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA), 42 U.S.C.A. §§ 11001 to 11050, the federal Clean Air Act (CAA), 42 U.S.C.A. §§ 7401 to 7671(q), and the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.24, and thus must be vacated. After reviewing the record and the applicable statutory and regulatory provisions, we affirm the DEP's decision to grant the modification permit.

I.

We summarize the pertinent facts. NEC owns and operates a natural gas-powered electrical generating facility in the Ironbound section of Newark. On November 1, 2012, the DEP issued NEC's initial air control operating permit pursuant to the CAA, as implemented in New Jersey by the Air Pollution Control Act

(APCA), N.J.S.A. 26:2C-1 to -25.2, and the regulations promulgated thereunder, N.J.A.C. 7:27-1.1 to -34.5. The 2012 permit allows NEC to use contaminated water (gray water) obtained from the Passaic Valley Sewerage Commission (PVSC) in NEC's cooling tower. It also permits NEC to use sulfuric acid to lower the gray water's pH level.[1] The 2012 permit limits NEC's sulfuric acid emissions to 10.57 tons per year.

Pertinent to this appeal, on August 27, 2014, NEC filed an application for a significant modification to its 2012 operating permit, pursuant to N.J.A.C. 7:27-22.24. NEC requested permission to increase the amount of sulfuric acid used in its cooling tower to sufficiently treat the gray water. NEC indicated in its application that the increased use of sulfuric acid would not increase the facility's allowable sulfuric acid emission rate.

In support of its application, NEC submitted information explaining that proper chemical treatment of the cooling water is essential to keep system surfaces at the facility free of microbiological growth and mineral scales, and to maintain overall system cleanliness and efficiency. NEC's application also advised that, in accordance with design specifications, the pH level of

---

[1] The pH scale measures how acidic or basic a substance is. The pH scale ranges from 0 to 14. A pH of 7 is neutral. A pH less than 7 is acidic. A pH greater than 7 is basic.

A-5794-14T1

the cooling tower water would be controlled by adding sulfuric acid.

The DEP notified appellants of the proposed modification. Additionally, NEC provided appellants with information concerning its facility and the chemicals used there, and responded to appellants' questions at an October 16, 2014 meeting. The DEP also invited appellants to a meeting to discuss any issues raised by NEC's pending application.

On December 16, 2014, the DEP published notice on its website of its intent to approve the proposed significant modification to NEC's permit. The notice stated that a public hearing was scheduled for February 3, 2015, and public comments were due by February 6, 2015. The DEP directly notified petitioners, the United States Environmental Protection Agency (EPA), and neighboring states about the pending permit application and public comment period.

The DEP held the public hearing as scheduled, pursuant to N.J.A.C. 7:27-22.11(a)(2) and -22.11(f). At the hearing, the DEP explained its purpose was to "seek public comments on proposed departmental actions modifying the [NEC] air pollution control operating permit." The DEP further stated it was proposing to approve the modification based on NEC's "compliance with all applicable state and federal air pollution control laws and rules."

Public comments spanned a wide variety of topics, including emission increases; air quality modeling and monitoring; discharge prevention and containment in the event of an explosion or spill; and the potential danger to the Ironbound community and the surrounding environment. Appellants participated in the hearing and submitted written comments to the DEP and EPA expressing their concerns about the proposed increase in the amount of chemicals transported, stored, and added as part of NEC's water treatment process.

On July 2, 2015, the DEP issued a report responding to the public comments. The DEP proposed to approve NEC's application to increase the annual permitted water tower chemical use limit and storage based on its calculations showing that emissions would remain unchanged even with the additional chemical use. The DEP determined the additional chemicals were needed to raise the pH of the cooling tower water and this would not cause any increase to sulfuric acid emissions. It further noted the proposed modifications would require NEC to continuously monitor the cooling tower water pH level; perform monthly calculations of the sulfuric acid emissions from the storage tank, turbines, duct burners, and auxiliary boiler; and monitor the total sulfuric acid emissions from the facility to ensure they comply with the annual emission cap. In short, the DEP concluded the proposed increased

A-5794-14T1

use of chemicals/sulfuric acid at NEC's facility would not result in any permitted emissions increase.

The DEP also addressed the public comments expressing concerns about public safety. It noted "[t]here are many [s]tate and [f]ederal laws and regulations designed to protect people and the environment from incidents at facilities storing, handling, or processing hazardous chemicals," including the Spill Act and EPCRA. The report explained that NEC has an approved Discharge Cleanup and Removal plan (DCR plan) and an approved Discharge Prevention, Containment and Countermeasures Plan (DPCC plan), as required by the Discharges of Petroleum and other Hazardous Substances Rules, N.J.A.C. 7:1E-1.1 to -10.4, and specifically N.J.A.C. 7:1E-4.2 and -4.3 (DPHS rules). The report further noted that NEC attempted to contact the Local Emergency Planning Committee (LEPC) to provide the DCR and DPCC plans as required by EPCRA. The DEP explained, however, that the plans contain security-sensitive information and are not generally available to the public, pursuant to N.J.A.C. 7:1D-3.2(b)(7). It noted that, under EPCRA, "the LEPC for Newark is responsible for establishing an emergency plan covering community response and possible evacuations in the case of releases and explosions."

The DEP issued a proposed permit action on July 7, 2015, signaling its intention to approve the requested modification to

NEC's air pollution control operating permit. As mandated by the CAA and APCA, the DEP sent the proposed permit to the EPA for its review and comment. 42 U.S.C.A § 7661d; N.J.A.C. 7:27-22.12. The EPA had no comments, and, after the forty-five day review period expired, the DEP issued the modification permit on August 24, 2015.

As a result of this action, NEC's 2012 permit was modified to: (1) include the sulfuric acid storage tank in the existing facility-wide sulfuric acid limit and include storage tank emissions in the calculation to demonstrate compliance with this limit; (2) raise the permitted water tower chemical use limit from 470 tons per year to 2267 tons per year; (3) add monitoring and record keeping requirements to the cooling tower flow rate limitation; and (4) add a new permit condition to regulate the pH of the cooling tower water. This appeal followed.

## II.

Appellants' primary contention on appeal is that the DEP was required to obtain a complete public emergency response plan, emergency notification plan, and detailed public reports before approving the modification to NEC's air control operating permit. They assert that such emergency planning documents are prerequisites to approval of the modification permit pursuant to the Spill Act, EPCRA, and Section 112(r) of the CAA. Consequently,

appellants contend the lack of compliance with these statutory provisions renders issuance of the modification permit void. In response, NEC and the DEP argue that the modification permit complies with all applicable statutes and the DEP did not abuse its discretion in issuing the permit.

Appellate review of an administrative agency's final determination is limited and deferential. In re Herrmann, 192 N.J. 19, 27 (2007). We accord "a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (citation omitted). A reviewing court may "not substitute its judgment . . . for that of [the] administrative agency." In re Young, 202 N.J. 50, 70 (2010).

Unless an agency's decision is "arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole[,]" it will be affirmed. Barrick v. State, 218 N.J. 247, 259 (2014) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). In making this determination, a reviewing court must examine:

> (1) whether the agency's action violated the legislative policies expressed or implied in the act governing the agency; (2) whether the evidence in the record substantially supports the findings on which the agency's actions were premised; and (3) "whether in applying the legislative policies to the facts, the

> agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."
>
> [Id. at 260 (quoting In re Carter, 191 N.J. 474, 482 (2007)).]

The burden of proving arbitrary, capricious or unreasonable action is upon the challenger. See Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011).

An agency's "interpretation of statutes and regulations within its implementing and enforcing responsibility" is entitled to deference. Ibid. (citation omitted); see also Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 70 (1985) ("[T]he grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals." (citation omitted)). Still, an agency's interpretation of the operative law must not be "plainly unreasonable." Waksal v. Dir., Div. of Taxation, 215 N.J. 224, 231 (2013) (citation omitted); see also In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 223 (App. Div. 2009) ("[A]dministrative agencies derive their authority from legislation, the terms of which they cannot alter, nor are they permitted to frustrate the legislative purpose."). Although "deference is generally given to an administrative agency charged with interpretation of the law, we are not bound by the agency's

legal opinions."  Bueno, supra, 422 N.J. Super. at 234 (citation omitted); see also A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div.), certif. denied, 200 N.J. 210 (2009).

In the present case, the DEP issued the air pollution control operating permit to NEC pursuant to the APCA and the CAA.  The APCA authorizes the DEP to promulgate rules preventing, controlling and prohibiting air pollution throughout the State. N.J.S.A. 26:2C-8.  Under the APCA, "[n]o person shall construct, reconstruct, install, or modify equipment or control apparatus" except in accordance with the APCA and implementing rules. N.J.S.A. 26:2C-9.2(a).  Additionally, the DEP may not issue an operating permit or operating permit revision unless the applicant shows that the equipment or control apparatus will operate as the APCA and implementing rules intend.  N.J.S.A. 26:2C-9.2(b).

The goal of the CAA is to "protect and enhance the quality of the Nation's air resources[.]"  42 U.S.C.A. § 7401(b)(1).  Title V of the CAA requires certain stationary sources of air pollution to obtain operating permits.   42 U.S.C.A. §§ 7661 to 7661(f); Ocean Cty. Landfill Corp. v. USEPA, 631 F.3d 652, 654 (3d Cir. 2011).  Title V does not impose "substantive pollution-control requirements . . . [i]nstead, it is designed to facilitate compliance and enforcement by consolidating into a single document

all of [a] facility's obligations under the [CAA]." Util. Air Regulatory Grp. v. EPA, __ U.S. __, ___, 134 S. Ct. 2427, 2436, 189 L. Ed. 2d 372, 385 (2014).

The Title V operating permit program is primarily implemented and enforced by the states, with federal oversight by the EPA. In New Jersey, the DEP is the Title V permitting authority. Ocean Cty. Landfill, supra, 631 F.3d at 654. The operating permit program includes public notice and comment requirements. N.J.A.C. 7:27-22.11. After the public comment period closes and the DEP considers comments on the draft operating permit, it then sends the EPA a copy of the proposed permit, the comments received, and its response to those comments for the EPA's review. N.J.A.C. 7:27-22.12. If the EPA does not object to the proposed permit within forty-five days, the DEP is then authorized to take final action on the application for the operating permit. Ibid.

Under the CAA/Title V/APCA framework, all "major" facilities, meaning those with the potential to emit certain threshold amounts of various pollutants, are required to obtain an operating permit. 42 U.S.C.A. §§ 7661 to 7661(f). NEC's facility constitutes a major facility, and, therefore, NEC was required to apply for a permit modification. As noted, NEC sought a significant modification of its permit to allow it to use an increased amount of sulfuric acid in the water cooling process.

The DEP issued the modification permit after determining that the added chemicals presented no increase in emissions pollution. Before the public comment period began, the DEP issued a notice of its intent to approve the modified permit based on NEC's certification that it "meets all applicable requirements of the Federal [CAA] and the New Jersey [APCA]." Following DEP's "evaluation of the information included in [NEC's] application, and a review of [NEC's] compliance status, [the DEP] concluded that this [modified] permit should be approved." After the required public notice and comment period ended, the DEP submitted the proposed permit for EPA review. The EPA offered no comments or concerns, and the DEP issued the modification permit upon determining it complied with the APCA.

Based on our review, we conclude there is sufficient credible evidence in the record to support the agency's determination. NEC explained why it needed to increase the amount of sulfuric acid used in the treatment process, how the sulfuric acid would be used to raise the pH level of the gray water, and that this would not result in any additional acid emissions. The modified air permit maintained the same allowable emission limits as the initial operating permit and imposed additional monitoring and record keeping conditions to ensure compliance. The permit application process comported with all procedural and notice requirements, and

12                                                                    A-5794-14T1

appellants do not contend otherwise. Since NEC's application for the modification permit complied with the APCA and its implementing regulations, the DEP's decision to grant the permit was not arbitrary, capricious, or unreasonable.

We reject appellants' contention that the DEP was also required to determine whether NEC was in compliance with the Spill Act, EPCRA, and the CAA before approving the modification permit. We find appellants' reliance on these additional statutory and regulatory provisions misplaced because they lie outside the air pollution control approval process.

The Spill Act requires that facilities submit a DPCC plan and a DCR plan. N.J.S.A. 58:10-23.11d2 and -23.11d3. While the DEP reviews these plans to prevent discharge and provide emergency response plans, the Spill Act's controlling provisions fail to mention permitting, and do not link the Spill Act's emergency planning and reporting obligations to a facility's eligibility for a permit to operate. Moreover, the Spill Act and its implementing regulations contain distinct enforcement mechanisms that provide for civil administrative penalties for violations, and do not include forfeiture or denial of a permit application. N.J.A.C. 7:1E-6.1 to 6.9.

Similarly, EPCRA also fails to note a link between its emergency planning and reporting strictures and a facility's

eligibility for an operating permit. Rather, like the Spill Act, EPCRA provides its own unique enforcement provisions allowing for citizen suits and the imposition of mandatory civil penalties upon entities that fail to comply with its reporting requirements. 42 U.S.C.A. §§ 11045 and 11046.

Finally, appellants contend the DEP erred by issuing the modified permit without first requiring NEC to comply with Section 112(r) of the CAA, also known as the Chemical Accident Prevention Provisions (CAPP Rules). 40 C.F.R. §§ 68.1 to .220. Specifically, they assert that "the 2012 Permit . . . included a condition which incorporated [CAA] Section 112(r) . . . [which] places the burden upon NEC to complete a public emergency response plan, and a public emergency notification plan."

While NEC's initial 2012 operating permit required the creation of a risk management plan, pursuant to Section 112(r), this requirement only applies if the facility is producing, processing, handling, or storing a chemical specifically listed in 40 C.F.R. 68.130 in an amount above a certain threshold quantity. Contrary to appellants' assertion, sulfuric acid, which is the basis of their concern, is not a regulated substance

pursuant to Section 112(r) and is not included in the list of regulated substances codified at 40 C.F.R. 68.130.[2]

In any event, even if sulfuric acid is a regulated substance and the CAPP rules apply, as appellants contend, Section 112(r) and the CAPP rules make no mention of their bearing on permitting decisions. Simply stated, while separate, independent federal and state laws may impose public emergency response and notification planning requirements upon industrial facilities such as NEC, they did not govern the DEP's decision to approve NEC's application to modify its air permit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In their reply brief, appellants additionally argue that NEC stores ammonia in two tanks onsite, and that Section 112(r) similarly applies to ammonia. However, an issue that is not addressed in a party's initial merits brief is deemed to be waived. See Drinker Biddle & Reath LLP v. N.J. Dept. of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011); Liebling v. Garden State Indem., 337 N.J. Super. 447, 465-66 (App. Div.), certif. denied, 169 N.J. 606 (2001). It is improper for a party to use a reply brief to raise an issue for the first time or enlarge the main argument. State v. Smith, 55 N.J. 476, 488, cert. denied, 400 U.S. 949, 91 S. Ct. 232, 27 L. Ed. 2d 256 (1970); L.J. Zucca, Inc. v. Allen Bros. Wholesale Distribs. Inc., 434 N.J. Super. 60, 87 (App. Div.), certif. denied, 218 N.J. 273 (2014); N.J. Citizens Underwriting Reciprocal Exch. v. Kieran Collins, D.C., LLC, 399 N.J. Super. 40, 50 (App. Div.), certif. denied, 196 N.J. 344 (2008); Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 595-96 (App. Div.), certif. denied, 168 N.J. 294 (2001).