27 A.3d 1237 (2011)
422 N.J. Super. 227
Bertha BUENO, Appellant,
v.
BOARD OF TRUSTEES, Teachers' Pension and Annuity Fund, Division of Pension and Benefits, Respondent.
No. A-1690-09T2
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2011.
Decided September 29, 2011.
*1239 Samuel J. Halpern, West Orange, argued the cause for appellant.
Jeff S. Ignatowitz, Deputy Attorney General, argued the cause for respondent (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Ignatowitz, on the brief).
Before Judges A.A. RODRIGUEZ, C.L. MINIMAN and LeWINN.
The opinion of the court was delivered by
C.L. MINIMAN, J.A.D.
Bertha Bueno appeals from final agency action of the Board of Trustees (the Board) of the Teachers' Pension and Annuity Fund, Division of Pensions and Benefits (the Division) denying her application for retroactive service retirement benefits as untimely because it was filed more than thirty days after the Board denied her application for ordinary disability retirement benefits. We now reverse.
The facts relevant to Bueno's application for ordinary disability retirement benefits and the issues surrounding the Board's denial of those benefits are described in our earlier decision respecting same. Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 404 N.J.Super. 119, 960 A.2d 787 (App.Div.2008), certif. denied, 199 N.J. 540, 973 A.2d 944 (2009). We need not recount them here.
However, we add the following facts. In denying ordinary disability retirement benefits on November 2, 2006, the Board advised Bueno as follows:
However, with your age or years of service you do qualify for a [s]ervice retirement benefit . . . effective July 1, 2006, provided you file the enclosed application within 30 days from the date of this Board decision or effective date of retirement, whichever is later. The acceptance by you of a [s]ervice retirement will not prejudice an appeal of the *1240 Board's denial of [o]rdinary [d]isability retirement benefits.
After reviewing our decision but before the Supreme Court denied certification, Bueno applied on February 5, 2009, for service retirement benefits effective March 1, 2009. After the Supreme Court denied certification, Bueno wrote to the Board on June 17, 2009, requesting that her service retirement benefits be paid retroactive to the date of her application for ordinary disability retirement benefits, i.e., as of July 1, 2006. She advised the Board that she had been told her paperwork was in order in May 2006, that the only issue at that time was the amount of pension to be paid, and that her service retirement date would thus be July 1, 2006.
Shortly thereafter, Bueno's counsel wrote to the Division on June 22, 2009, advocating on her behalf and asserting that she had been distraught over the denial of ordinary disability retirement benefits and firmly convinced that she would prevail on appeal, leading to her failure to file within thirty days of the initial denial of benefits. He also pointed out that the language requiring such an application within thirty days was not "underlined, capitalized or in bold[,] which would in no uncertain terms have made clear her obligation to affirmatively file a service retirement application."
On July 10, 2009, the Division rejected Bueno's position relying on the Board's November 2006 letter requiring an application within thirty days. The Division noted that Bueno's application for service retirement benefits had not been filed until February 5, 2009. "In accordance with our rules and regulations, an application must be on file prior to the effective date of retirement. Therefore, the earliest possible retirement date available is March 1, 2009."
On July 17, 2009, Bueno appealed the Division's determination to the Board, asserting that
the stress of leaving my job and the legal situation really left me quite shaken and unnerved and I neglected to handle this element. I always thought that my pension would be my pension and that my rights were reserved because I was contesting the denial of the disability claim. I was distraught and very overwhelmed by the possibility of a lengthy legal case and the possibility of not being able to return to my beloved teaching career.
The Board rendered an initial decision on August 6, 2009, denying Bueno's appeal based on N.J.A.C. 17:3-6.2(a), which provides that a retirement allowance is not due and payable until thirty days after the later of the date of approval or effective date of retirement, and N.J.A.C. 17:3-6.3(a), providing that "a member shall have the right to withdraw, cancel or change an application for retirement at any time before the member's retirement allowance becomes due and payable." Relying on its November 2, 2006, letter, the Board reasoned that Bueno's application to change her retirement type should have been received no later than December 2, 2006. The Board found that Bueno's reasons for a late application to change were insufficient to cure the late application, adding that it had "no authority to approve [her] request for a retroactive retirement date change from March 1, 2009 to July 1, 2006."
Bueno's counsel wrote to the Board on September 15, 2009, disagreeing with its decision. He pointed out that the thirty-day conversion requirement did not appear in any statute or regulation and asserted that the Board's practice was arbitrary, capricious, and inconsistent with Fiola v. State, Dep't of Treasury, 193 N.J.Super. *1241 340, 474 A.2d 23 (App.Div.1984). He did not request a hearing as the facts were undisputed.
The Board issued its final administrative decision on October 30, 2009. First, the Board found that no hearing was required as only questions of law were presented. Secondly, the Board concluded that it could not grant retroactive service retirement benefits based on the provisions of N.J.S.A. 18A:66-43 and N.J.A.C. 17:3-6.1, -6.2(a), and -6.3(a). It noted that it had twice advised Bueno that she had to file an application for such benefits by December 2, 2006, in order to have them retroactive to July 1, 2006, yet she failed to comply with that requirement. As such, her application for a retirement date prior to March 1, 2009, was again denied. This appeal followed.
Bueno argues "that the Board acted arbitrarily and capriciously by refusing to authorize a service retirement pension retroactive to the date of [her] disability retirement claim." Further, the Board's decision was "contrary to the legislative intent" because "[n]either the controlling statute . . . nor the implementing regulations restrict a member's conversion privileges to 30 days or less." Additionally, even if the practice is valid, she was unable to make an informed choice about her pension options at the time in question.
The Board responds that it properly denied Bueno's request for retroactive service retirement benefits beginning as of the date she filed her application for disability retirement benefits. It urges that "[t]he statutes and regulations do not allow for a member to receive a retirement benefit until [an] application is filed, and do not allow for retroactive benefits." Further, Bueno "was informed of her eligibility for a [s]ervice retirement . . . on the date she was denied her [o]rdinary [d]isability retirement" but did not file an application until February 2009.
In reply, Bueno argues that "the issue in this case is not whether a member is entitled to retroactive pension benefits" but rather "whether the Board has arbitrarily restricted the time within which a member whose application for a disability retirement has been denied to exercise his or her conversion privilege to a service retirement." The Board's "informal practice of limiting the conversion period to 30 days" is not supported by governing statutes, regulations, or case law. Because she had filed an appeal from an adverse decision concerning her disability retirement, "her right to convert to a service retirement pension utilizing the original retirement date should . . . remain intact during the pendency of the appeal. . . ."
The judicial role in reviewing decisions of administrative agencies is restricted to the following four inquiries:
(1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27, 644 A.2d 76 (1994).]
Accordingly, "[o]ur function is to determine whether the administrative action was arbitrary, capricious or unreasonable." Burris v. Police Dep't, W. Orange, 338 N.J.Super. 493, 496, 769 A.2d 1112 (App. Div.2001); see also Henry v. Rahway State Prison, 81 N.J. 571, 580, 410 A.2d 686 (1980). The burden of proof is upon *1242 Bueno. McGowan v. N.J. State Parole Bd., 347 N.J.Super. 544, 563, 790 A.2d 974 (App.Div.2002); Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J.Super. 276, 285, 509 A.2d 786 (App.Div.1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987).
"Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.Super. 52, 56, 766 A.2d 312 (App.Div.2001). Additionally, "[i]t is settled that `[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Ibid. (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J.Super. 93, 102, 704 A.2d 562 (App.Div. 1997)). "Although we recognize that deference is generally given to an administrative agency charged with interpretation of the law, we are not bound by the agency's legal opinions." Levine v. State, Dep't of Transp., 338 N.J.Super. 28, 32, 768 A.2d 192 (App.Div.2001).
According to N.J.S.A. 18A:66-43(a),[1] upon the attainment of sixty years of age, a member "may retire on a service retirement allowance by filing with the retirement system a written application . . . stating at which time subsequent to the execution and filing thereof [s]he desires to be retired." Then the Board shall retire the member "at the time specified or at such other time within 1 month after the date so specified as the board finds advisable." Ibid. Using the designated form, an application for service retirement benefits must be "filed with the Division on or before the requested date of retirement[,]" and "becomes effective on the first of the month following receipt of the application unless a future date is requested." N.J.A.C. 17:3-6.1(a). While the statute and regulation concern the effective date for service retirement benefits, they do not pertain to the conversion of an application from one type of retirement allowance to another.[2]
Pursuant to N.J.A.C. 17:3-6.3(a), "a member shall have the right to withdraw, cancel or change an application for retirement at any time before the member's retirement allowance becomes due and payable by sending a written request signed by the member. Thereafter, the retirement shall stand as approved by the Board." That allowance "shall not become due and payable until 30 days after the date the Board approved the application for retirement or 30 days after the date of retirement, whichever is later." N.J.A.C. 17:3-6.2(a). These regulations do not expressly limit the time to change an application while an appeal of the Board's denial of the application is pending; nor do they require the filing of an entirely new application in order to effect a change in an existing application.
*1243 At oral argument, the Board urged that Sobel v. Board of Trustees of the Teachers' Pension & Annuity Fund, 139 N.J.Super. 55, 352 A.2d 585 (App.Div.1976), controls. However, that case is factually distinguishable from the present matter. There, a schoolteacher applied for accidental disability retirement benefits and was notified on June 20, 1973, that she was ineligible due to her age. Id. at 56, 352 A.2d 585. At that time, she "was advised that she could apply for [a] service retirement effective July 1, 1973[,] if she filed an application within 30 days of the date of [the Board's] letter." Ibid. She never appealed the denial of her accidental disability application and waited until August 22 to file her application for service retirement benefits, which resulted in the Board ruling that her retirement would become effective October 1, 1973. Ibid.
On appeal, we noted that "[t]he Board has apparently followed the practice of accepting a substitute service retirement application within 30 days of its notice that accidental disability retirement benefits have been denied." Id. at 57, 352 A.2d 585. This practice thus permitted "a `retroactive' date of retirement on the basis of a substitute application. . . ." Ibid.[3]
We framed the "essential issue in the case" as whether the appellant "should be excused from complying with the requirement that a retirement application be filed at least 30 days prior to the effective retirement date." Ibid. We found that she had been "given clear notice that her disability retirement was denied and that she could file for a service retirement by separate application." Ibid. The Board even sent her the service retirement application with its denial letter and "suggested that [she] file it `promptly.'" Ibid. However, she failed to do so, and we affirmed the Board's decision, which resulted in a three-month loss of retirement benefits. Id. at 57-58, 352 A.2d 585. We concluded:
The Board's practice reasonably accommodates a member's timely election of service retirement benefits upon notice of the denial of disability benefits. We see no reason to compel the Board to effectuate retroactively a retirement application made more than 30 days after notice is given of the denial of disability benefits. The Board may properly treat that late application as a new application to be processed according to its normal rules and regulations.
[Id. at 58, 352 A.2d 585]
Unlike Sobel, Bueno appealed the denial of her disability benefits. She filed an application for service retirement benefits on February 3, 2009, which was several months before the Supreme Court's denial of her petition for certification on June 3, 2009. Bueno v. Bd. of Trs., 199 N.J. 540, 973 A.2d 944 (2009). In that application, Bueno requested an effective retirement date of March 1, 2009, but on June 17, 2009, just two weeks after the Supreme Court's final decision, she sent a letter to the Division of Pension and Benefits asking that it honor the July 1, 2006, retirement date from her original application.
By appealing, Bueno did not abandon her application for a disability pension and Sobel should not foreclose her from converting her application and preserving her original retirement date under the present circumstances. The Board's November 2006 letter advised Bueno of her right to *1244 appeal its decision, and, because she exercised that right, in effect, she did not receive final notice of denial of her benefits until the Supreme Court's June 2009 decision. See Sobel, supra, 139 N.J.Super. at 57-58, 352 A.2d 585 (finding that the window for filing a substitute service retirement benefit application and securing a retroactive retirement date did not close until thirty days after notice that the member's disability benefits were denied). Bueno filed her substitute application prior to receiving final notice from the Supreme Court and, within thirty days of its receipt, she sent a letter requesting that the Division honor the July 2006 retirement date from her original retirement application.[4]
The Board based its final administrative determination on its November 2006 letter, which "specifically stated that for a service retirement benefit effective July 1, 2006[,] it was necessary for [Bueno] to file an application within 30 days from the date of the Board decision or her effective date of retirement, whichever is later." Because no controlling statute, regulation, or case precedent expressly limited the time period for conversion of a member's existing retirement application to thirty days while an appeal is still pending, we must consider whether the Board's refusal to honor Bueno's July 2006 retirement date constituted improper rule-making.
The Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, defines an administrative rule as "each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." N.J.S.A. 52:14B-2(e). "If an agency determination or action constitutes an `administrative rule,' then its validity requires compliance with the specific procedures of the APA that control the promulgation of rules." Airwork Serv. Div. v. Dir., Div. of Taxation, 97 N.J. 290, 300, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Generally, "agency decisions and findings in contested cases" are not administrative rules. N.J.S.A. 52:14B-2(e)(3).
In Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 328-32, 478 A.2d 742 (1984), the Court discussed the distinction between an administrative rule and an administrative adjudication and outlined factors to consider when evaluating whether an agency determination, "to be valid, had to comply with the requirements governing the promulgation of administrative rules as provided by the APA." Id. at 328, 478 A.2d 742. "The procedural requirements for the passage of rules are related to the underlying need for general fairness and decisional soundness that should surround the ultimate agency determination." Id. at 331, 478 A.2d 742.
The Metromedia Court concluded
that an agency determination must be considered an administrative rule when all or most of the relevant features of administrative rules are present and preponderate in favor of the rule-making process. Such a conclusion would be *1245 warranted if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
[Id. at 331-32, 478 A.2d 742.]
"The Metromedia criteria, although originally formulated in a context that distinguished rulemaking from adjudication, essentially provide a test of when rulemaking procedures are necessary in order to validate agency actions or determinations." Woodland Private Study Group v. State, Dep't of Envtl. Prot., 109 N.J. 62, 68, 533 A.2d 387 (1987). These "factors are relevant whenever the authority of an agency to act without conforming to the formal rule making requirements is questioned." Doe v. Poritz, 142 N.J. 1, 97, 662 A.2d 367 (1995). They "need not be given the same weight, and some factors will clearly be more relevant in a given situation than others: `All six of the Metromedia factors need not be present to characterize agency action as rule[-]making, and the factors should not merely be tabulated, but weighed.'" Ibid. (quoting In re Request for Solid Waste Util. Customer Lists, 106 N.J. 508, 518, 524 A.2d 386 (1987)).
If agency action is deemed to be rule-making, it is "invalid absent the prior promulgation of rules in compliance with the [APA]." Metromedia, supra, 97 N.J. at 337, 478 A.2d 742. However, courts have recognized an exception: "where the agency's action `is inferable from the enabling statute itself and does not reflect a new or changed position, it will not be held invalid for failure to meet rule-making procedural requirements.'" St. Barnabas Med. Ctr. v. N.J. Hosp. Rate Setting Comm'n, 250 N.J.Super. 132, 144, 593 A.2d 806 (App. Div.1991) (quoting In re 1982 Final Reconciliation Adjustment, 209 N.J.Super. 79, 87, 506 A.2d 1269 (App.Div.1986)).
Here, factors (4), (5), and (6) weigh in favor of deeming the Board's determination rulemaking. Under factor (4), the Board's "determination was not otherwise expressly provided for by the statute, nor was it clearly and obviously implied." Metromedia, supra, 97 N.J. at 334, 478 A.2d 742. Neither the statute nor the regulations promulgated under it dictated such a limitation. See N.J.S.A. 18A:66-1 to -93; N.J.A.C. 17:3-6.1 to -6.27.
Under factor (5), the decision "reflects an administrative policy that . . . was not previously expressed in any official and explicit agency determination, adjudication or rule. . . ." Metromedia, supra, 97 N.J. at 331, 478 A.2d 742. Although the Sobel court noted that the Board had an unpromulgated policy pertaining to the conversion of a retirement application and the maintenance of a retroactive retirement *1246 date, see Sobel, supra, 139 N.J.Super. at 57, 352 A.2d 585, that "policy" did not extend as far as imposing a time restriction when an appeal was still pending. Of note, in 2008, subsequent to the filing of Bueno's initial retirement application and appeal, the Board promulgated N.J.A.C. 17:3-6.1(g) and (h), which directly address the conversion of retirement benefits and maintenance of a retroactive retirement date, albeit without express provisions pertaining to a pending appeal.
Under factor (6), the determination "reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy." Metromedia, supra, 97 N.J. at 331-32, 478 A.2d 742. The Board concluded that "the statutory and regulatory language . . . is clear and unambiguous" and that the Board was "without authority" to grant Bueno a retroactive retirement date. It "reach[ed] its findings of fact and conclusions of law in this matter on the basis of the retirement system's statutes and without the need for an administrative hearing."
Although the decision may not satisfy factor (1) because it may encompass "a narrow select group" of members in Bueno's situation, id. at 331, 478 A.2d 742, it satisfies factor (2), because the Board announced its interpretation of the applicable statutes and regulations, its decision "was intended to have continuing effect," and the decision will apply to similarly situated members, id. at 334, 478 A.2d 742. Moreover, under factor (3), the Court found an agency determination to be "essentially prospective in nature, notwithstanding its attempted application" to a single party in the matter at hand. Ibid.
On balance, the Board's decision in this matter constituted rulemaking, and due to its failure to comply with statutory rulemaking procedures, reversal is warranted. See id. at 337, 478 A.2d 742.
In reaching our conclusion, a few additional points are noteworthy. Generally, courts have found that, although "the interpretation by an administrative agency of the statute it is responsible to administer is entitled to some weight, [a court is] nevertheless not bound by that interpretation where, as here, we are satisfied that it is contrary to legislative intent and plain statutory meaning." Fiola, supra, 193 N.J.Super. at 347, 474 A.2d 23. "Pension statutes should be liberally construed and administered in favor of public employees because they represent deferred compensation for a government employee's service." In re Hess, 422 N.J.Super. 27, 34, 25 A.3d 1199 (App.Div.2011); see also Steinmann v. State, Dep't of the Treasury, 116 N.J. 564, 572, 562 A.2d 791 (1989) ("`Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby.'") (quoting Estate of Hagel v. Bd. of Trs., 226 N.J.Super. 182, 186, 543 A.2d 1010 (App.Div.1988)). Thus, "[f]orfeiture of earned pension rights . . . constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loath to permit . . . unless that penalty has been clearly mandated by the Legislature." Id. at 347-48, 474 A.2d 23.
Reversed.
NOTES
[1] An amendment to this statute in 2008 changed the retirement age for individuals becoming members on or after its effective date but did not affect existing members. L. 2008, c. 89.
[2] However, two subsections were added to the regulation in 2008, approximately two years after Bueno filed her first application for retirement. Pursuant to N.J.A.C. 17:3-6.1(g), "[a] member filing for a disability retirement shall not file a separate application for any other type of retirement while a disability application is pending." Pursuant to N.J.A.C. 17:3-6.1(h),

[i]f a disability retirement application is denied by the Board and the applicant qualifies for any other retirement benefit, the applicant will be required to submit a separate application for retirement. If the applicant submits the separate application for retirement within 30 days of the Board's decision, the applicant may retain the retirement date designated on the disability retirement application. (Emphasis added.)
[3] We noted that Sobel had argued that "the Board's failure to adopt that practice by formal rule or regulation filed according to law" rendered it invalid but we found that her "cause [wa]s not advanced by th[at] contention." Ibid. But see W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J.Super. 25, 41, 916 A.2d 1066 (App.Div.2007) (finding that an "in-house rule or policy violate[d] the [APA] as administrative rule-making").
[4] In a March 15, 2011, supplemental letter to the court, Bueno's counsel distinguished Sobel, citing N.J.A.C. 17:3-6.3(a), and urged that "Bueno filed her application for service retirement approximately three months prior to the Supreme Court's denial of her petition for certification. Because her original disability retirement application never became `due and payable[,'] she was thereby able to preserve and utilize her original retirement date for her service retirement." However, as noted in Sobel, supra, 139 N.J.Super. at 57, 352 A.2d 585, the Board's "practice" of permitting a retroactive retirement date upon the filing of a substitute application was not provided for by rule or regulation.