**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3105-14T4


IN THE MATTER OF RAMONA CARTER

---

Argued November 2, 2016 — Decided  March 7, 2017

Before Judges Alvarez and Manahan.[1]

On appeal from the Civil Service Commission,
Docket No. 2013-2328.

Mark W. Catanzaro argued the cause for
appellant Ramona Carter.

Kristina E. Chubenko argued the cause for
respondent Mercer County Department of Public
Safety (Arthur R. Sypek, Jr., Mercer County
Counsel, attorney; Ms. Chubenko, of counsel
and on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent Civil Service
Commission (Susan C. Sharpe, Deputy Attorney
General, on the statement in lieu of brief).

---

[1] Hon. Carol E. Higbee was a member of the panel before whom this
case was argued.  The opinion was not approved for filing prior
to Judge Higbee's death on January 3, 2017.  Pursuant to R. 2:13-
2(b), "Appeals shall be decided by panels of 2 judges designated
by the presiding judge of the part except when the presiding judge
determines that an appeal should be determined by a panel of 3
judges."  The presiding judge has determined that this appeal
remains one that shall be decided by two judges.  Counsel has
agreed to the substitution and participation of another judge from
the part and to waive reargument.

PER CURIAM

Ramona Carter, a Mercer County corrections officer, appeals from the February 4, 2015 final decision of the Civil Service Commission (Commission) imposing a fifteen-working-day suspension and a $152.23 fine. We affirm in part, reverse in part, and remand for reconsideration of the penalty imposed.

We briefly summarize the record developed during the hearing that followed transmission of Carter's appeal to the Office of Administrative Law (OAL) under the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15, and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6. A July 22, 2012 preliminary notice of disciplinary action (PNDA) charged Carter with the following violations: conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(11), specifically violation of provisions of the Mercer County Public Safety Table of Offenses and Penalties: C-9 Step 2 — "insubordination: intentional disobedience or refusal to accept reasonable order[;]" C-8 — "[f]alsification: intentional misstatement of material fact in connection with work . . . or in any record [or] report[;]" and D-15 Step 2 - violation of standard operating procedure (SOP) 004 (employee handbook), 007 (custody break periods), and 245 (post orders-relief officer).

At the departmental hearing, Carter was found guilty of all charges except the violation of SOP 245. The hearing officer imposed a suspension of twenty-five working days and a fine of one-half day's pay, and the County's final notice of disciplinary action (FNDA) was issued on February 19, 2013. The appeal to the Civil Service Commission and transmittal to the OAL followed.

Lieutenant Michael Kownacki testified at the OAL hearing that on the morning of June 15, 2012, he was the shift commander from 11:00 p.m. to 7:00 a.m. Carter was then working as a relief officer 4, meaning her sole duties were to relieve other officers when they took their breaks. At approximately 5:00 a.m., he radioed Carter that she was to relieve an Officer Poli in Control Room 3 (CR-3) at 5:45 a.m. She telephoned back confirming her receipt of the order.

Poli had to be relieved so he could travel to a nursing home for his overtime assignment as relief to an Officer Lane, who in turn had to return to the Mercer County Correctional Center at 7:00 a.m. to begin his regularly scheduled shift as a transportation officer. At approximately 6:05 a.m., Poli called Kownacki because his relief had not arrived. Kownacki called Carter over the radio, and received a response from the CR-2 officer stating that she was in the CR-2 bathroom. Kownacki asked

A-3105-14T4

that Carter call him as soon as she left the bathroom, and he then contacted an Officer Jiovany to relieve Poli.

When Carter called Kownacki, he asked her why she had not relieved Poli at 5:45 a.m., and she responded that she needed to use the bathroom. Kownacki ordered her to relieve Poli in CR-3 and said he would call her later. At approximately 6:25 a.m., Kownacki ordered Carter to write a report explaining her failure to relieve Poli.

Kownacki testified that when Carter submitted her incident report, it was false and inaccurate. The report read that Carter was not asked to relieve Poli until 6:00 a.m., that she did so, and only then used the bathroom. Kownacki charged Carter with the violation of SOP 004, "Employee Handbook," and SOP 007, "Custody Break Periods."

Carter's prior disciplinary history included a written reprimand for lateness on April 17, 2003, a one-day suspension for unsatisfactory attendance on July 31, 2003, two days fine at $608.80 per day for insubordination on May 22, 2010, two written reprimands issued in August 2012, one for violations of a rule, regulation or policy, and the other for chronic absenteeism, and a five-day suspension for chronic excessive absenteeism on 10/27/12.

Captain Richard Bearden, Mercer County's second witness, stated that he viewed video footage of the hallway outside CR-2 before he drafted Carter's charges, and saw her entering CR-2 at approximately 4:30 a.m. and leaving at approximately 6:00 a.m. He assumed she remained in CR-2 while on her thirty-minute break from 5:00 to 5:30 a.m., and the additional thirty minutes which followed.

On the stand, Carter acknowledged receiving Kownacki's call at 5:00 a.m., although she could not recall whether he gave her a specific time to relieve Poli. She said she had a fibroid condition which made her menstrual cycles difficult to manage while at work but did not submit medical documentation in support of her claim.

Carter admitted having made mistakes in her report, including that she was ordered to relieve Poli at 5:00 a.m. not 6:00 a.m. She also admitted that she erred when she said she wrote in the report that she went to the bathroom only after relieving Poli. When asked why she did not amend her report once it came to her attention that it contained inaccuracies, she responded that she was "not feeling well" and "did [not] think to . . . amend the report."

The administrative law judge (ALJ) concluded that Carter was a credible witness. Nonetheless, the ALJ held the County met its

burden with regard to the charge of conduct unbecoming a public employee by a preponderance of the credible evidence. The ALJ noted Carter had worked for Mercer County for several years and "understood the high standard of conduct expected of her." If she was having medical problems, the ALJ found she could have readily informed someone and requested her assignment be given to another. Thus, the ALJ concluded her failure to appropriately respond to the situation was conduct unbecoming.

As defined within Mercer County's table of offenses, the charge of insubordination required willful disobedience. The ALJ concluded that although Carter had "exercised poor judgment in not informing her supervisor" of her difficulties, "[h]er actions did not reflect intentional disobedience or refusal to accept an order."

Moreover, the ALJ did not view Carter's failure to correct the errors in her report as deliberate misstatements of fact, the second aspect of the insubordination charge. However, he found that the violation of SOP 004, relating to the submission of accurate reports, was technical and the County proved that charge.

With regard to violation of SOP 007 regarding break periods, the ALJ concluded that Carter's decision to remain in CR-2 was not unreasonable in light of her physical issues. Thus although she engaged in conduct unbecoming a public employee, the only

additional charge of which she was guilty was the violation of SOP 004. Accordingly, the ALJ reduced her penalty from the twenty-five-working-day suspension and fine of one-half day's pay imposed by the hearing officer to a five-day suspension and no fine. He affirmed the fine of one-half day's pay.

The Commission disagreed both as to the findings of guilt as well as the penalty reduction. The Commission agreed Carter was guilty of conduct unbecoming, but rejected the notion that her failure to submit an accurate report or correct it once she learned of the mistakes did not constitute insubordination. The Commission also equated Carter's failure to advise anyone of her inability to comply with the order with insubordination.

The Commission, concerned that the ALJ did not fully discuss Carter's disciplinary history, imposed a more severe penalty. In lieu of the ALJ's five-day suspension, the Commission imposed a fifteen-working-day suspension.

On appeal, Carter contends that she should be acquitted of the insubordination and falsification charges. She argues that the Commission employed a more expansive definition than those found in the Table of Offenses and Penalties.

Our role in reviewing administrative agency decisions is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We affirm such decisions where they are supported by the evidence, even if

A-3105-14T4

we may question the wisdom of the decision or would have reached a different result. <u>Ibid</u>. A "strong presumption of reasonableness attaches to [an agency decision]." <u>In re Carroll</u>, 339 <u>N.J. Super.</u> 429, 437 (App. Div.) (internal quotation marks omitted), <u>certif. denied</u>, 170 <u>N.J.</u> 85 (2001). An agency's factual findings are binding upon us when supported by adequate, substantial, and credible evidence. We reverse an agency's decision only if we find it to be "arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole." <u>Stallworth</u>, <u>supra</u>, 208 <u>N.J.</u> at 194 (internal quotation marks omitted). The burden of establishing that agency action is arbitrary, capricious, or unreasonable is on the appellant. <u>Bueno v. Bd. of Trs.</u>, 422 <u>N.J. Super.</u> 227, 234 (App. Div. 2011).

In determining whether agency action is arbitrary, capricious, or unreasonable, we ask if it violates express or implied legislative policies, if the record contains substantial evidence to support the findings on which the agency based its action, and whether in applying the legislative policies to the facts, the agency erred in reaching a conclusion that could not have been reasonably reached. <u>Stallworth</u>, <u>supra</u>, 208 <u>N.J.</u> at 194.

Carter claims that insubordination is narrowly defined in her charges as requiring intentional conduct. The Commission's decision, however, states: "[a]ppellant's failure to not advise

anyone of her inability to promptly follow the order given, <u>whether intentional or not</u>, can be considered insubordination since the Commission's definition of insubordination is much more expansive than the one utilized by the ALJ." [Emphasis added.]

The Commission viewed Carter's failure to more responsibly address her situation as possibly unintentional. We therefore agree that the Commission erred in concluding Carter's conduct constituted insubordination. Only intentional behavior supports the charge. If in the Commission's opinion Carter's conduct might have been unintentional, then finding her guilty of the disciplinary charge was a decision not supported by the credible evidence in the record. This is true regardless of the definition of insubordination used—which at a minimum requires intentional conduct.

We do not agree with Carter regarding her failure to correct her report. She did not accurately state either the time she was ordered to relieve Poli, or accurately describe her whereabouts. Carter did not attempt to correct her misstatements until she was on the stand. That conduct falls squarely within the definition of falsification found in the PNDA. It was an "[i]ntentional misstatement of material fact in connection with work . . . in any [] report . . . ." Accordingly, on this charge we affirm. The evidence, and the inferences drawn from it, support the

Commission's decision with regard to falsification. See Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001). It was not arbitrary, unreasonable, or capricious, and was clearly supported by the evidence in the record.

Because we reverse in part and affirm in part, the matter is remanded for reconsideration of the appropriate penalty in light of our decision.

Affirmed in part, reversed in part, and remanded for reconsideration of the penalty.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION