**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1012-17T2

DANIELLE SIANA,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

      Respondent-Respondent.

_____

Argued December 5, 2018 – Decided December 18, 2018

Before Judges Alvarez and Mawla.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS No. 310-052442.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Stephanie Kozic, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Christina Cella, Deputy
Attorney General, on the brief).

PER CURIAM

Petitioner Danielle Siana appeals from a September 12, 2017 decision by the Board of Trustees of the Police and Fireman's Retirement System (Board), which adopted an August 15, 2017 decision by an Administrative Law Judge (ALJ) denying her accidental disability retirement benefits. We affirm.

We take the following facts from the record. Petitioner was employed as a senior corrections officer at East Jersey State Prison. On February 15, 2014, the date of the underlying incident, petitioner was assigned to a visitor gate. It had snowed the day before. During her morning shift, petitioner injured her eye by falling and striking a desk. When the prison nurse came to her aid, petitioner told the nurse she had slipped and hit her face on the desk. An ambulance transported petitioner to the hospital. There, petitioner advised the doctor treating her she had slipped and fallen onto a metal desk. In the days following petitioner's release, she was seen by a medical provider and described the incident in a similar fashion. According to petitioner, she slipped on the floor, which was wet from the snowfall the night before.

Prison officials prepared a report of the incident, which indicated petitioner stated she had bent down to pick up a box of gloves and collided with

the corner of the desk. Petitioner testified this was inaccurate because her head would not have struck the desk in the front near her eye, but in the back as she was standing up after retrieving the box of gloves.

On cross-examination, petitioner testified she prepared and signed her own incident report in which she stated "I walked into the office of the [prison visitor] [g]ate and as I bent down to pick up a box of latex gloves [I] smashed the left side of my head on the corner of the black metal desk." Petitioner conceded she did not mention falling in her report. She also agreed it was possible for her to hit the front of her head in the process of bending down to retrieve the box of gloves. Petitioner conceded she did not recall what happened to cause her injury.

Petitioner also confirmed the nurse's report accurately recorded petitioner's statement to the nurse, namely, "[she] hit [the] left side of [her] forehead above the left eye on the corner of the table." Petitioner agreed the report made no mention to the nurse she had slipped.

Furthermore, the following colloquy occurred between the ALJ and petitioner:

> THE COURT: And can you explain to me why you would have felt that you would have hit the back of your head if you were reaching down for gloves[?] I didn't completely understand that.

[PETITIONER]: Well, I don't know, in my mind when you've reached down for something and when you come back up. You know what I mean? Like when you reach down to pick up something and then if you come back, like fast, then you would hit the back. 'Cause why would you go down fast?

On August 15, 2017, the ALJ issued a written decision finding petitioner did not qualify for accidental disability retirement benefits and agreed with the Board's initial determination petitioner qualified for ordinary disability retirement benefits. The ALJ concluded petitioner had not proven by a preponderance of the evidence the incident was undesigned and unexpected. Specifically, the ALJ found:

> No mention in any of [the prison's] reports [in evidence] reflect[ing] the condition of the facility as being wet and slushy. It is unreasonable to think that no one with responsibility to complete a special custody report or accident investigation would not comment on the wet or slushy floor of the facility. The first time it appears in print is in the medical records with petitioner's history reflecting a slip on water.

The ALJ concluded petitioner "provided no medical evidence to support a conclusion that the nature of her injury and disability is in any respect unusual or extraordinary in common experience with respect to the kind of intended work activity that injured her."

A-1012-17T2

On September 12, 2017, the Board adopted the ALJ's decision. This appeal followed.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 579-80). The burden of proving an agency action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that '[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" E.S. v. Div. of

Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)). "[W]e are not bound by the agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. (citing Mayflower Secs. Co., Inc. v. Bureau of Secs., 64 N.J. 85, 93 (1973)).

On appeal, petitioner argues her injury was undesigned and unexpected. She claims the ALJ ignored her testimony, which consistently asserted she had slipped on a wet surface, and made no findings about her credibility. Petitioner asserts the ALJ's findings are flawed because he concluded petitioner had stated nothing about a wet floor following the incident, when in fact, she had.

According to the Supreme Court, in order

> to obtain accidental disability benefits, [an applicant] must prove:
>
> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>     a. identifiable as to time and place,
>
>     b. undesigned and unexpected, and

6

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; [and]

5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Richardson v. Bd. of Trs., 192 N.J. 189, 212-13 (2007).]

Here, as the ALJ noted, the parties' dispute centered on whether petitioner's injury was "undesigned and unexpected." In this regard, the ALJ made ample findings, which we have repeated above. These findings also reflect the ALJ's consideration of petitioner's version of the incident, which he ultimately rejected. Indeed, the ALJ specifically addressed petitioner's claim she had slipped and fallen down upon the desk, but concluded the evidence did not support the claim because of the lack of objective evidence the floor was wet. The ALJ also considered petitioner's claim she was injured by bending down to retrieve a box of gloves by considering her testimony that doing so would have resulted in an injury to the back of her head. Ultimately, the ALJ

rejected the theory because it was not supported by the greater weight of the evidence and petitioner's lack of recall regarding what actually happened.

Pursuant to the facts and evidence presented to the ALJ, he was not required to make a more forceful declaration regarding petitioner's credibility. Given the deference we owe the Board, its decision was not arbitrary, capricious, unreasonable, or unsupported by substantial credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1012-17T2