**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3305-17T4

BRUCE BANKO,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted March 13, 2019 – Decided March 27, 2019

Before Judges Nugent and Mawla.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. 2-10285031.

Joseph P. Schiappa, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Austin J. Edwards, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Bruce Banko appeals from a February 22, 2018 decision by the Board of Trustees, Public Employees' Retirement System (Board), denying him accidental disability retirement benefits. We affirm.

We take the following facts from the record. Banko worked for the Woodbridge Township Sanitation Department from 1985 to June 20, 2013, in various capacities. He began as a lifter, and was responsible for riding on the back of garbage trucks, lifting garbage containers, and emptying them into the trucks. Banko was promoted to driver, which still required he occasionally assist the lifter with heavier garbage containers. In total, Banko worked for the Township for twenty-eight years engaged in physical labor.

As a result, beginning in 1985, Banko reported multiple lower back and neck complaints to his supervisors. Within the first decade of service, he began experiencing cervical spine problems and injuries for which he received workers' compensation benefits. In 2002, he filed for benefits as a result of neck and back injuries caused by riding in a garbage truck. Banko also filed claims in 2008, for work-related injuries, including his back. In 2010, Banko's doctor treated him with medication and physical therapy for cervical spine injuries.

On February 15, 2011, Banko observed that an automobile was about to strike his garbage truck. As a result, he unbuckled his seat belt, stood up in the

truck's cab, and attempted to move into the passenger seat. The resulting collision threw Banko into the passenger seat of the cab, injuring him. Banko saw an orthopedist who treated him with physical therapy and medication. After eight weeks, he returned to work, and in April 2011, injured his back while lifting bulk garbage. In February 2012, Banko drove his truck under a low overpass, causing it to strike the overpass and flip onto its side. He was not wearing a seatbelt. Banko missed work for three days as a result of the incident.

In February 2013, Dr. Hoan-Vu Nguyen performed neck surgery on Banko. Dr. Nguyen's operative report noted Banko's neck injury existed for decades prior to the February 2011, and resulted from degenerative changes. Banko returned to work six weeks after the surgery and continued to perform manual labor. On June 20, 2013, Banko was assigned to operate a jackhammer, but could not complete his task due to neck pain. This proved to be his final day of work.

In October 2013, Banko applied for accidental disability retirement benefits based on the February 2011 accident. He claimed the accident caused him to suffer from neck and lower back pain, headaches, and weakness in his right hand. The Board awarded Banko ordinary disability retirement benefits, but denied him accidental disability retirement benefits, reasoning his disability

was the result of a pre-existing condition or a pre-existing condition aggravated or accelerated by his work.

Banko appealed and a hearing occurred before an administrative law judge (ALJ). The ALJ considered testimony from Banko's expert, Dr. Cary Skolnick, and the Board's expert, Dr. Richard Rosa.

The experts agreed Banko had experienced neck and back problems prior to the February 2011 accident. However, after reviewing the 2011 report from an MRI taken following the accident, Dr. Skolnick testified the accident caused Banko to develop myelomalacia, or a softening of the spinal cord. Dr. Skolnick identified the myelomalacia as the reason for Banko's surgery. Notably, Dr. Skolnick's report made no mention of myelomalacia. Additionally, he was unaware of the back injuries Banko suffered in 2008 and 2012, and the jackhammer-related injury in 2013.

Dr. Rosa reviewed Banko's MRI films, and reports of the neck and back for 2010, 2011, and 2013. He opined Banko's disability was not the result of acute trauma, but age-related degeneration. He noted no significant difference in Banko's pre- and post-2011 accident MRIs. Although the 2011 report mentioned myelomalacia, he noted the surgery performed by Dr. Nguyen was not to treat myelomalacia. He testified myelomalacia commonly manifests as a

4

degenerative condition and rarely as an acute, painful one requiring medical intervention. Dr. Rosa concluded the myelomalacia was an incidental condition and not the sole cause of Banko's disability, but rather, the result of several incidents of minor injury to the spine over a lengthy period of time.

The ALJ found both experts credible. However, he concluded "I am not persuaded that the February 2011 accident is the essential and substantial contributing cause of the disability. There is conflicting testimony as to what the MRI results conclude." The ALJ concluded Banko had not met the burden of proof by a preponderance of the evidence in order to receive accidental disability retirement benefits.

The Board affirmed the ALJ's decision. This appeal followed.

## I.

"[We] have 'a limited role' in the review of [agency] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "[A] 'strong presumption of reasonableness attaches to [an agency decision].'" In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). "In order to reverse an agency's judgment, [we] must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or . . . not supported by substantial

credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry, 81 N.J. at 579-80). The burden of proving an agency action is arbitrary, capricious, or unreasonable is on the challenger. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

We "may not substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "It is settled that [a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." E.S v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (alteration in original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (internal quotations omitted)). "[W]e are not bound by the agency's legal opinions." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)). "Statutory and regulatory construction is a purely legal issue subject to de novo review." Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

On appeal, Banko argues the Board erred because it ignored his expert's testimony the myelomalacia resulted from the 2011 accident and combined with his pre-existing condition to create the disability. He asserts the accident caused the myelomalacia because the condition did not appear in his medical records prior to the accident. Thus, Banko argues he sustained his burden of proof because he adduced medical proof of a causal relationship between the accident and the myelomalacia. Banko also claims the ALJ admitted hearsay and improperly decided the experts' credibility.

In order

> to obtain accidental disability benefits, [an applicant] must prove:
>
>> 1. that he [or she] is permanently and totally disabled;
>>
>> 2. <u>as a direct result of a traumatic event that is</u>
>>
>>> a. identifiable as to time and place,
>>>
>>> b. undesigned and unexpected, and
>>>
>>> c. <u>caused by a circumstance external to the [applicant] (not the result of pre-existing disease that is aggravated or accelerated by the work);</u>

3.  that the traumatic event occurred during and as a result of the [applicant]'s regular or assigned duties;

4.  that the disability was not the result of the [applicant]'s willful negligence; [and]

5.  that the [applicant] is mentally or physically incapacitated from performing his [or her] usual or any other duty.

[Richardson v. Bd. of Trs., 192 N.J. 189, 212-13 (2007) (emphasis added).]

The Supreme Court has held where an "underlying condition . . . has not been directly caused, but is only aggravated or ignited[] by the trauma, then the resulting disability is, in statutory parlance, 'ordinary' rather than 'accidental' and gives rise to 'ordinary' pension benefits." Gerba v. Bd. of Trs., 83 N.J. 174, 186 (1980); see also N.J.S.A. 43:15A-43. Conversely, if "the traumatic event is the direct cause, i.e., the essential significant or substantial contributing cause of the disability, it is sufficient to satisfy the statutory standard of an accidental disability even though it acts in combination with an underlying physical disease." Id. at 187.

Here, the record readily supports the conclusions reached by the ALJ and affirmed by the Board, namely, that Banko did not meet his burden of proof to establish the accident caused myelomalacia and that the condition was the

reason for his disability. Faced with two equally plausible explanations for Banko's disability, the ALJ, and then the Board, accepted Dr. Rosa's opinion, which was supported by the credible evidence in the record. Banko's arguments misapprehend our standard of review because they seek that we second-guess the ALJ's fact finding and credibility determinations, which is not our role. The Board's decision is supported by sufficient credible evidence in the record as a whole. R. 2:11-3(e)(1)(D). Finally, Banko's argument regarding the alleged improper admission of hearsay lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3305-17T4