**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3036-17T3

KATHLEEN STARLING,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,[1]

     Respondent-Respondent.

_____

Submitted May 2, 2019 – Decided May 16, 2019

Before Judges Simonelli and Whipple.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Kathleen Starling, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney

---

[1]  Improperly pled as New Jersey Department of the Treasury, Division of Pension and Benefits.

General, of counsel; Robert E. Kelly, Deputy Attorney
General, on the brief).

PER CURIAM

Appellant Kathleen Starling is a former teacher with the City of Linden Board of Education (Linden) who was involuntarily retired and received involuntary ordinary disability retirement benefits from the Teacher's Pension and Annuity Fund (TPAF). Starling appeals from the February 2, 2018 final agency decision of respondent Board of Trustees of the TPAF (Board) adopting the initial decision of an Administrative Law Judge (ALJ) affirming the Board's June 2, 2016 decision that Starling remained totally and permanently disabled from performing the regular and assigned duties as a teacher. We affirm.

The underlying facts are set forth in our prior opinion in Starling v. TPAF, No. A-0450-07 (App. Div. Mar. 18, 2009) (slip op. at 2-5), affirming Starling's involuntary retirement based on a psychiatric disability. In that appeal, we noted that the ALJ credited the undisputed testimony of Robert Latimer, M.D., a psychiatrist, who testified that although having been diagnosed Bipolar Disorder, Starling's symptoms were more consistent with a more serious condition known as Schizo-Affective Disorder, a variation of Schizophrenia in which the prominent symptoms are changes in mood and behavior, rather than delusions and hallucinations. Id. at 4. From his review of the record, Latimer

opined that Starling suffered from this condition for a substantial period of time, and had a mixture of moods and psychotic symptoms, which diminished her functional capacity, and constricted her interests, including her social life. Ibid. Latimer opined that Starling suffered from a substantial psychiatric disorder, which remained mostly untreated, and that she could not be relied on to obtain treatment because she lacked insight. Ibid. He was concerned that Starling worked with children and could not function and run the teaching job smoothly and contribute to the smooth running of a school. Id. at 4-5. He concluded within a reasonable degree of psychiatric certainty that Starling was totally and permanently impaired to discharge the duties of a teacher. Id. at 5. We commented that "[t]he credible evidence in the record confirms that [Starling] suffers from a serious psychiatric disorder rendering her totally and permanently unable to perform her regular and assigned duties as a teacher." Id. at 7.

Starling subsequently received a doctorate degree in education in 2011 from Capella University, an online university. In 2012, Starling returned to working in education. From May 2012 until May 2013, she was a part-time instructor for an ALOHA Mind Math franchise teaching math on an abacus. From 2013 until 2015, she was a substitute teacher for the Plainfield Board of Education. Between March 2015 and June 2015, she was a supplemental teacher

in a Catholic high school. From August 2015 until December 2015, she was a resource teacher coordinator at a charter school in Newark, but the administration terminated her when it learned she had been retired involuntarily and was not eligible to work in New Jersey public schools.

In 2016, Starling wrote to the Division of Pensions and Benefits requesting to terminate her involuntary retirement and return to active employment in the TPAF pension system. She submitted the report of Marina Galea, M.D., a psychiatrist. The report, which amounted to little more than the doctor's notes, stated that, "[b]ased on today's interview and current [m]ental [s]tatus [e]xam (if patient was truthful in her account of events) patient does not currently display any signs or symptoms of Bipolar Disorder or other psychiatric illness." Galea qualified her report by noting she had not reviewed Starling's past psychiatric records. Galea refused to treat Starling further, as Starling did not provide medical or court records, and would not write Starling a letter recommending her return to work. Galea did not testify at the hearing before the ALJ.

Starling obtained a second opinion from Brendan McCollum, M.D., a psychiatrist. Based only on Starling's self-reporting, McCollum determined she remained stable in the community and did not display or endorse psychiatric

symptoms and was fit to return to work. McCollum opined that Starling was not a threat of danger to herself of others and did not suffer any impairment in her current mental status or functioning. He wrote Starling a prescription to return to work, stating she was currently under his care and clear to return to work from a psychiatric standpoint.

Daniel B. LoPreto, Ph.D. conducted an independent psychological examination of Starling for the Board and issued a comprehensive report. LoPreto interviewed Starling, administered the Personality Assessment Inventory (PAI) test, and reviewed numerous documents, including Starling's school and pension records, medical records and evaluations, court decisions, and the job description for a teacher. He stated that while he believed Starling's Bipolar Disorder was in remission, her recent educational work experience was not commensurate with the responsibilities of a teacher and she would likely decompensate if returned to her former position. He stated that the concerns present in 2006 had been unmitigated, namely Starling's lack of insight and her inability to understand her need for medication and other treatments, as well as her significant denial and minimization of the risk of medication discontinuation. LoPreto ultimately concluded that Starling continued to be totally and permanently disabled from performing the normal duties of a teacher.

On June 21, 2016, the Board advised Starling that it denied her request to terminate her involuntary retirement and return her to work in the TPAF system based on LoPreto's examination and report. Starling appealed the Board's decision. The Board transmitted the matter to the Office of Administrative Law (OAL) for a hearing as a contested case.

Starling testified that she did not believe she needed medication or treatment. She blamed her involuntary retirement on the animus of certain teachers and called two Linden teachers to establish that fact; however, the witnesses provided no corroborating testimony.

McCollum testified as a fact witness for Starling. Based solely on Starling's self-reporting and two, twenty-minute interviews with her, McCollum concluded she was in remission or in stable mental health and was fit to return to work.

LoPreto testified as an expert for the Board. He noted that Latimer's testimony in the prior OAL matter supported his opinion that Starling suffers from chronic psychosis. He testified that Starling's chronic psychosis remained untreated because of her lack of insight, denial, and minimization. He also testified that while Starling's chronic psychosis may have been in remission at the time, she was likely to decompensate in the future because she refused

medication and treatment. LoPreto testified about the dangers of a person with Starling's psychiatric condition not taking medication and determined that Starling's prognosis was poor because of her inability to understand that she needs medication and other treatments.

LoPreto explained that Starling's psychological issues are a mix and along a continuum where she can function successfully in non-stressful, limited environments, but noted that teaching is not such an environment. He further explained that Starling's failure to take medication and undergo treatment prevented the stabilization of her cycling and she would likely find herself embroiled in another incident. He concluded to a reasonable degree of psychological certainty that Starling was totally and permanently disabled from performing the normal duties of a teacher and that if she returned to the classroom, "she would not survive long."

The ALJ relied primarily on LoPreto's undisputed expert's report and testimony in concluding that Starling remained totally and permanently disabled from the performance of the duties of teacher and any other comparable duty that Linden was willing to assign her. The ALJ noted that McCollum was not qualified as an expert witness and provided little support for his opinion. The ALJ emphasized that even if Starling had offered McCollum as an expert

7

witness, the ALJ would have given his testimony less weight because he did not perform any comprehensive evaluation of Starling, merely saw her twice, relied on her self-report, and did not review the medical documentation. The ALJ ordered that Starling remain involuntarily retired from the TPAF and continue receiving her retirement benefits.

On appeal, Starling attempts to dispute and re-litigate her involuntary retirement, which we affirmed on the merits in her prior appeal. If an issue has been determined on the merits in a prior appeal, it cannot be re-litigated in a later appeal, even if of constitutional dimension. Washington Commons LLC v. City of Jersey City, 416 N.J. Super. 555, 564 (App. Div. 2010). Thus, we will not address Starling's arguments relating to her involuntary retirement.

The only issue before us is whether the Board's decision to deny Starling's request to terminate her involuntary retirement and return her to active employment in the TPAF pension system was arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence in the record as a whole. In re Stallworth, 208 N.J. 182, 194 (2011). Starling bore the burden of proof in this regard. Bueno v. Bd. of Trs. of the Teacher's Pension & Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011). She failed to meet her burden.

N.J.S.A. 18A:66-40 governs the reinstatement of disabled employees in the TPAF system, and provides as follows:

> [o]nce each year the retirement system may, and upon [the retiree's] application shall, require any disability beneficiary who is under the age of [sixty] years[2] to undergo medical examination by a physician or physicians designated by the system for a period of [five] years following his [or her] retirement in order <u>to determine whether or not the disability which existed at the time he [or she] was retired has vanished or has materially diminished</u> . . . .
>
>     . . . .
>
>      . . . If the report of the medical board shall show that such beneficiary is able to perform either his [or her] former duty or other comparable duty which his [or her] former employer is willing to assign to him [or her], the beneficiary shall report for duty[] . . . .
>
> [N.J.S.A. 18A:66-40(a) (emphasis added).]

The record is devoid of expert medical evidence that Starling's disability, which existed at the time she was involuntarily retired, "has vanished or has materially diminished." <u>Ibid.</u> To the contrary, the undisputed expert medical evidence confirms that Starling continues to suffer from a serious psychiatric disorder that renders her totally and permanently unable to perform the duties

---

2  Starling was fifty-four years old at the time of LoPreto's examination.

of a teacher.  Starling's rambling and inapplicable arguments to the contrary in her merits brief support this conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3036-17T3