**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6033-17T3

IN THE MATTER OF GARY
MASON, ANN KLEIN FORENSIC
CENTER, DEPARTMENT OF
HUMAN SERVICES.

_____

Submitted January 27, 2020 – Decided May 14, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-1498.

Kamensky Cohen & Riechelson, attorneys for appellant Gary Mason (Mark D. Laderman, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Department of Human Services, Ann Klein Forensic Center (Donna Arons, Assistant Attorney General, of counsel; Dipti Vaid Dedhia, Deputy Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Gary Mason, a former employee of the Ann Klein Forensic Center (Ann Klein),[1] which is operated by the New Jersey Department of Human Services (DHS) appeals from the Civil Service Commission's (CSC) July 20, 2018 final agency decision adopting an Administrative Law Judge's (ALJ) initial decision upholding Mason's termination from employment based upon his testing positive for drugs a second time. On appeal, Mason argues that the CSC's determination was "arbitrary, capricious or unreasonable, or was not supported by sufficient, competent, and credible evidence in the record." He also asserts that it failed to properly apply "progressive discipline to this case." We disagree and affirm substantially for the reasons stated by the ALJ in her comprehensive written initial decision that the CSC adopted.

The facts developed at the hearing before the ALJ are summarized as follows. Prior to his termination, Mason had been employed by Ann Klein for more than nine years. There, he served as a medical security officer responsible for the daily care of clients who suffered from various forms of mental illness. Before Mason tested positive for drugs, he had no history of any issues relating to the performance of his duties and had an unblemished disciplinary record.

---

[1] Ann Klein Forensic Center is a forensic psychiatric hospital serving a patient population that requires a secured environment.

A-6033-17T3

It was undisputed that during Mason's employment, in 2010, Ann Klein adopted a drug policy that applied to all of its employees. The purpose of the policy was to insure a "drug free environment" and to protect Ann Klein's patients' safety.

Under the policy, if an employee tested positive during a random drug screening, the employee could be terminated or referred to an outside service, the Employee Advisory Services (EAS), which would assign the employee a counselor who would then "recommend [an appropriate] course of treatment for [that] employee." Neither Ann Klein nor the DHS participated in any decisions about the course of treatment, but it was obligated to allow the employee to be absent from work for a period of time so that the employee could secure proper treatment. EAS is not under the supervision of DHS.

The drug policy also contained a provision that permitted employees to voluntarily seek out treatment for drug related issues through EAS "independently by the employee without employer involvement." However, an employee's participation in involuntary drug treatment did not "prevent the employer from taking appropriate disciplinary action for violations under this policy." The policy also required that if an employee, after participation in treatment, tested positive again they would be terminated.

 A-6033-17T3

On November 13, 2015, during a random drug screening, Mason tested positive for cocaine. He was then referred to EAS, and a referral to an outside drug treatment provider was made in accordance with the drug policy. Mason participated in a thirty-day program that met three times per week for two hours a day. According to Mason, the program included a "cognitive/rational thinking class, and an art and music class." During the time that he was attending the program, Mason was not reporting for work.

In January 2016, the treatment provider indicated that Mason could return to work. At the time, Mason understood that under the drug policy he would be subjected to "a minimum of three follow-up random drug" screenings within his first year back at work. He also understood that if he failed any of those tests he would be terminated.

In May 2016, Mason participated in his first random drug screening which came back negative. However, his second test on October 6, 2016, came back positive for cocaine. Prior to receiving the results, Mason contacted EAS about receiving additional treatment. He met with an EAS representative, without any employer referral, the day after he took the test but before he had the results that led to his termination. EAS referred him to another outside treatment provider

A-6033-17T3

that required Mason to take medical leave for an anticipated ninety days to attend a treatment facility in Florida.

According to Mason, while he was supposed to attend the program for ninety days, because of insurance issues, he could only participate for twelve days when he was then sent home. Mason found the program to be better than the one he was originally assigned to by EAS the previous year. After his discharge and return to New Jersey, he went back to Florida to attend a different program, this time scheduled for seventy-five days. There, he had his own "therapist, medical doctor and psychiatrist." He believed that this program was superior to the programs he had been assigned earlier by EAS. At the time of the hearing before the ALJ, Mason had been rehabilitated and since completing his treatment, he was no longer using drugs.

After Mason's October 2016 positive test result, Ann Klein issued a notice of disciplinary action terminating his employment for violations of N.J.A.C. 4A:2-2.3(a)(6), "conduct unbecoming a public employee," N.J.A.C. 4A:2-2.3(a)(11), "other sufficient cause," and "Administrative Order 4:08 E1," the drug policy, based upon his failure to pass the October 2016 drug test. Mason did not seek a departmental hearing, and Ann Klein's actions became final on November 7, 2016. Thereafter, Mason filed an appeal, and the matter was

referred by the CSC to the Office of Administrative Law for assignment to the ALJ for a hearing as a contested matter.

The hearing was held before the ALJ on February 14, 2018. At the hearing Charles Moore and Ann Kenyon testified on behalf of Ann Klein. Mason testified on his own behalf.

Moore was the Employee Relations Coordinator for Ann Klein, and he was responsible for administration of the employee disciplinary program and handling grievances. Kenyon was the Director of Human Resources for Ann Klein. They both testified to the history of Mason's employment, his drug testing, referral for treatment, and his ultimate termination. They also testified about the drug policy which was not contested. Mason testified about his employment, treatment, and his belief that the programs that EAS had initially referred him to were not sufficient, especially compared to the ones he voluntarily entered after taking the October 2016 random drug screening.

After considering the testimony and other evidence, the ALJ issued a comprehensive written decision sustaining Ann Klein's termination of Mason. In the decision, the ALJ summarized the witnesses' testimony and the law applicable to the charges that formed the basis for Mason's termination. The ALJ concluded that "Mason's conduct in using illicit drugs . . . adversely effects

the morale and efficiency of the [DHS] and has a tendency to destroy public respect in the delivery of governmental services. His conduct in using cocaine endanger[ed] the safety of the clients he services as well as other employees." For that reason, the ALJ concluded that Ann Klein met its burden "establishing a violation of unbecoming conduct."

The ALJ also considered whether the employer met its burden to establish "other sufficient cause" under N.J.A.C. 4A2-2.3A12. The ALJ defined that charge as a violation of "the implicit standard of good behavior that devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct." The ALJ concluded that Mason's conduct violated those implicit standards and sustained the charge.

The ALJ turned to the violation of the administrative order that contained the applicable drug policy and found that it was "essential that the [DHS] operate in a drug free environment, and that its employees be free from the effects of controlled dangerous substances. It is the responsibility of each employee to ensure that he is drug free in compliance with the law and the requirements of this policy." The ALJ reviewed the policy and concluded that it was clear that Mason violated that policy as well.

A-6033-17T3

Turning to the penalty of termination, the ALJ reviewed the "concept of progressive discipline." Citing to In re Herrmann, 192 N.J. 19, 33 (2007), the ALJ observed that where "misconduct is severe[ or] . . . unbecoming to the employees' position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest," it should not be followed. The ALJ also observed that the specific policy did not provide for "a range of discipline" and only allowed for a "removal . . . for a second violation of the drug testing policy," which Mason was aware of when he returned to work after his initial treatment. The ALJ found it "commendable" that Mason was able to seek and obtain further treatment, but that fact did not support a recommendation that his punishment be anything other than what was provided for in the policy. For that reason, ALJ recommended that Mason's termination be sustained.

Thereafter, Mason, through counsel, filed exceptions to the ALJ's initial decision. In counsel's letter, he stated that the DHS did not properly serve the preliminary notice of discipline, which is why Mason did not seek a departmental hearing. He also contended that the DHS "failed to [(1)] properly utilize their discretion in dealing with . . . Mason[; (2)] . . . to provide . . . Mason with a reputable and effective initial rehabilitation[, which] should not deny . . .

Mason of his protections under state and federal law[; and (3)] . . . meet its burden of proof." He also argued that "progressive discipline was improperly disregarded in this matter."

On July 18, 2018, the CSC addressed the matter at its meeting and voted to adopt the ALJ's decision. The CSC's decision was made after considering the recommendation of the ALJ and the exceptions filed by Mason, as well as the response submitted on behalf of Ann Klein. On July 20, 2018, the CSC issued its written decision confirming its acceptance of the ALJ's initial decision. This appeal followed.

Our review of a final agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). "In order to reverse an agency's judgment [we] must find the agency's decision to be 'arbitrary, capricious or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Ibid. (second alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). The burden of proving the agency's action is arbitrary, capricious and unreasonable is on the challenger. Bueno v. Bd. of Trs., 422 N.J. Super. 227, 234 (App. Div. 2011).

In making our determination we consider the following factors:

> (1) [W]hether the agency's action violates express or implied legislative policies, that is, did the agency

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[In re Carter, 191 N.J. 474, 482-83 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

See also Bueno, 422 N.J. Super. at 233-34.

We "may not substitute [our] own judgment for the agency's even though [we] might have reached a different result." Carter, 191 N.J. at 483 (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "Nevertheless, 'we are not bound by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)).

On appeal, Mason argues that the ALJ incorrectly determined that DHS did not have discretion to work with Mason after he failed the October 2016 test by sending him again for treatment. He also claims that his testing positive at that time was the result of the inadequate treatment to which EAS originally referred him. In addition, Mason contends that "the policy subjecting [him] . . . to additional testing violates New Jersey law pursuant to A.D.P. v. ExxonMobil

Research [& Eng'g Co., 428 N.J. Super. 518 (App. Div. 2012)[2]]."  Finally, he argues that the CSC's decision approving termination must be reversed because it failed to follow progressive discipline.  We find no merit to these contentions.

Applying our deferential standard of review, we affirm substantially for the reason expressed by the ALJ in her thorough initial decision, as adopted by the CSC.  We add only the following comments.

Mason's reliance on A.D.P. is inapposite.  There, we considered a claim under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to 10:5-49, brought by an individual who voluntarily disclosed her disability of alcoholism to her employer.  Id. at 524.  Unlike the employer in that case, Ann Klein and DHS were only made aware of Mason's cocaine use, relapse, and the voluntary treatment he subsequently sought, after he failed the random drug tests in November 2015 and October 2016.  Moreover, in A.D.P. the voluntary disclosure is what triggered the employer's random breathalyzer tests, which other employees were not subjected to for continued employment.  Id. at 525, 529.  In fact, in that case while the employer had a set of conditions it relied on "as a basis for testing," "[a]side from [the employee's] admitted alcoholism,

---

[2]  In A.D.P., we reversed the grant of summary judgment for the employer, holding that its alcohol testing policy was discriminatory on its face by singling out alcoholics.  Id. at 524-25.

A-6033-17T3

none of the conditions" for testing applied. Id. at 529. The employer's actions "demonstrated 'hostility toward members of the employee's class.'" Id. at 534. Here however, all Ann Klein employees were subject to random drug screenings and the same policy, a situation different than in A.D.P. Additionally, and significantly, the employee's duties in A.D.P. as a research associate were not directed toward the care and safety of others, especially individuals suffering from various forms of mental illness. Id. at 526-27.

Finally, we have no cause to disturb the discipline imposed here. Our "deferential standard applies to the review of disciplinary sanctions as well." Stallworth, 208 N.J. at 195 (quoting Herrmann, 192 N.J. at 28). In our review of "administrative sanctions, [we] . . . consider whether the 'punishment is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness.'" Ibid. (quoting Carter, 191 N.J. at 484).

Here, in light of the serious responsibilities demanded of Mason as a medical security officer in a forensic psychiatric hospital that treats, among others, individuals who have been charged with or convicted of committing serious offenses, Mason's termination based upon his use of cocaine after treatment, warranted his termination. "[P]rogressive discipline [may be] bypassed when an employee engages in severe misconduct, especially when the

12

employee's position <u>involves public safety and the misconduct causes risk of harm to persons</u> or property." <u>Id.</u> at 196-97 (emphasis added) (quoting <u>Herrmann</u>, 192 N.J. at 33). That risk of harm was clearly present here and, combined with the policy's stated procedure, supported Mason's termination. <u>See</u> <u>Herrmann</u>, 192 N.J. at 38-39 (recognizing the "legitimate public policy reasons" in removing an employee from her position after the employer, "in so short a time," could no longer trust the employee); <u>Henry</u>, 81 N.J. at 580 (reversing the CSC's decision to reduce penalty from removal to suspension where employee/prison guard falsified a report); <u>Bowden v. Bayside State Prison</u>, 268 N.J. Super. 301, 303, 306 (App. Div. 1993) (holding that a prison guard playing cards with an inmate warranted bypassing progressive discipline).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6033-17T3